STATE OF CONNECTICUT *v.* ANTHONY CARI

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, Js.

Argued March 9—decided May 24, 1972

*Thomas F. Keyes, Jr.,* for the appellant (defendant).

*Jerrold H. Barnett,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *John F. Mulcahy, Jr.,* and *Robert K. Walsh,* assistant state's attorneys, for the appellee (state).

HOUSE, C. J.  The defendant Anthony Cari was tried by a jury and found guilty of the crime of arson in violation of § 53-83 of the General Statutes and of the crime of having a dangerous or deadly weapon in a motor vehicle in violation of § 29-38 of the General Statutes.  The court denied the defendant's motion to set aside the verdict on the grounds that it was against the law and the evidence, because of claimed errors in the charge and because of claimed errors in rulings by the court, and also denied the defendant's motion for judgment notwithstanding the verdict.  From the judgment rendered on the verdict, the defendant has appealed assigning error in the court's denial of these motions as well as certain other errors claimed to have occurred in the course of the trial.

The ruling on both motions is tested in light of the evidence printed in the appendices to the briefs. *State* v. *Mortoro,* 157 Conn. 392, 393, 254 A.2d 574; *State* v. *Gyuro,* 156 Conn. 391, 397, 242 A.2d 734, cert. denied, 393 U.S. 937, 89 S. Ct. 301, 21 L. Ed. 2d 274; *Kingston* v. *Blake,* 151 Conn. 714, 715, 201 A.2d 460.

The appendices properly disclose the relevant evidence submitted to the jury.  Practice Book

§§ 716–722. From this evidence the jury could have found the following facts: About 11:45 p.m. on May 30, 1968, Robert A. Patchell was working as a bartender at the Dogwood Inn on the Boston Post Road in the town of Orange, Connecticut. While looking out of the window facing the highway, he saw a Cadillac automobile stop directly across the street facing in the direction of Milford. A man was standing outside the car and appeared to be looking for something in the back seat.

Patchell then stopped watching the car and began to close the restaurant. As he was about to go from the dining room to the barroom, there was a big flash in the barroom. Patchell ran to the front door and observed a man dressed in a light shirt and dark pants running away. The man was about sixty feet away when he was first observed, running in a westerly direction. The Cadillac automobile which Patchell had observed previously had moved down the road about 300 to 500 feet in a westerly direction. Patchell then returned to the dining room and after attempting to extinguish the blaze called the Orange police. As Patchell was waiting outside the tavern for the police to come, the same Cadillac automobile drove by and two men in the car yelled something to him. When the police arrived, he described the car as a 1957 two-door Cadillac, light colored with a dark top.

Later, about 1:15 a.m., Police Officer Robert A. Gimler was traveling east on the Post Road when he observed a Cadillac automobile meeting the description furnished by Patchell turning around in the parking lot of Art's Package Store. Simultaneously, Officers Joseph Cybart and Robert F. Stankye arrived in their automobile at the scene and observed the same Cadillac automobile noted by Officer Gim-

ler. Officer Gimler was the first to reach the vehicle, followed soon thereafter by Officers Cybart and Stankye. Officer Gimler blocked the path of the automobile from the front, slightly to the driver's side, and radioed to police headquarters. Officer Stankye pulled to the right side of the vehicle about eight to ten feet away.

As Officers Stankye and Cybart drove up, both of them observed the operator of the Cadillac lean over the front seat, open the door on the passenger's side slightly and drop a bottle to the ground. Officers Cybart and Gimler removed the defendant from the automobile while Officer Stankye went to the passenger side of the vehicle and picked up a soda bottle which contained gasoline with stuffing material in the top. The defendant was then arrested and the Cadillac automobile was searched on the scene. In the trunk were found a shotgun with a portion of the barrel sawed off, several boxes of shotgun shells of a type which could be used in the weapon and three knives. There was a shell in the chamber of the shotgun at the time it was found.

The defendant's first claim of error is that the state, on the evidence presented at trial and as summarized above, failed to prove the guilt of the defendant beyond a reasonable doubt and thus the court erred in rendering judgment on the verdict and denying the defendant's motions for a directed verdict and for judgment notwithstanding the verdict. In support of his contention, the defendant relies on the test we reiterated in *State* v. *Kelsey,* 160 Conn. 551, 553, 274 A.2d 151: " 'It is fundamental that "[t]he trier may not reach a conclusion of guilt where the facts, established by the evidence, including those reasonably and logically inferred from other proven facts, are rationally consistent

with the innocence of an accused. A conclusion of guilt requires proof beyond a reasonable doubt, and proof to that extent is proof which precludes every reasonable hypothesis except that which it tends to support, and is consistent with defendant's guilt and inconsistent with any other rational conclusion." *State* v. *Foord,* 142 Conn. 285, 295, 113 A.2d 591; *State* v. *Annunziato,* 145 Conn. 124, 136, 139 A.2d 612.' *State* v. *Reid,* 154 Conn. 37, 40, 221 A.2d 258." In that case the decisive question was whether the identification of the defendant Kelsey's automobile was, by itself, and without evidence of Kelsey's presence at the scene, sufficient evidence to support a conviction. Unlike that situation, in the case at bar there was evidence not only that an automobile similar to the defendant's was in the vicinity of the Dogwood Inn when the crime was committed but also that the defendant, when later apprehended, had in his possession materials of the type that are commonly used in the commission of the crime of which he was accused. In addition, the defendant was dressed in a manner fitting the description of the man Patchell had seen get out of the Cadillac automobile just a few seconds before the flash fire. Furthermore, there was evidence that the defendant, shortly before he was arrested, had returned to the scene to view the damage done to the Dogwood Inn.

While none of these facts taken singly is decisive on the issue of guilt, their cumulative effect was sufficient to permit the jury to find that the defendant's guilt had been proved beyond a reasonable doubt. There is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. *State* v. *McGinnis,* 158 Conn. 124, 129, 256 A.2d 241.

The defendant's second assignment of error is that the court erred in charging the jury as follows: "Now, it is the sworn duty of Courts and jurors to safeguard the rights of persons charged with crime by respecting the presumption of innocence which the law imputes to every person so charged. But the law is made to protect society and innocent persons and not to protect guilty ones. If this presumption of innocence has been overcome or removed by evidence clearly demonstrating beyond a reasonable doubt that the accused person is guilty of the crime charged, then it is the sworn duty of the jury to enforce the law which is made for the protection of life, society and property and to render such a verdict as the evidence warrants." It is the claim of the defendant that a statement of this nature was improper because it tended to weaken the effect of the instruction on presumption of innocence which had been emphasized in an earlier portion of the charge.

The defendant has cited several cases from other jurisdictions which tend to support his claim. See *Shaw* v. *United States,* 244 F.2d 930 (9th Cir.); *Gomila* v. *United States,* 146 F.2d 372 (5th Cir.); *Chinn* v. *State,* 210 So. 2d 666 (Miss.); *Martinez* v. *People,* 470 P.2d 26, 29 (Colo.); *State* v. *Romeo,* 42 Utah 46, 128 P. 530. On the other hand, the overwhelming majority of courts have held that statements in a charge which instruct the jury that the presumption of innocence is designed to protect the innocent and not to aid the guilty are proper. See *United States* v. *Farina,* 184 F.2d 18, 20 (2d Cir.), cert. denied, 340 U.S. 875, 71 S. Ct. 121, 95 L. Ed. 636, rehearing denied, 341 U.S. 928, 71 S. Ct. 795, 95 L. Ed. 1359; *Moffitt* v. *United States,* 154 F.2d 402, 404 (10th Cir.), cert. denied, 328 U.S. 853, 66 S.

Ct. 1343, 90 L. Ed. 1625; *State* v. *Farnsworth,* 51 Idaho 768, 10 P.2d 295; *People* v. *Dowling,* 95 Ill. App. 2d 223, 238 N.E.2d 131; *Turner* v. *State,* 102 Ind. 425, 1 N.E. 869; *State* v. *Barnes,* 202 Kan. 21, 446 P.2d 774; *State* v. *Hanlon,* 38 Mont. 557, 100 P. 1035; *State* v. *Gee Jon,* 46 Nev. 418, 211 P. 676; *Lofton* v. *State,* 489 P.2d 1169, 1174 (Wyo.); *Carrillo* v. *State,* 474 P.2d 123, 124 (Wyo.), cert. denied, 401 U.S. 921, 91 S. Ct. 907, 27 L. Ed. 823.

We continue to be in accord with the majority view that the charge as given was proper and correct since it was used in conjunction with clear instruction both as to the presumption of innocence and as to the duty of the state to prove beyond a reasonable doubt the defendant's guilt of the crimes with which he is charged. *State* v. *Colonese,* 108 Conn. 454, 459, 143 A. 561.

The defendant's third assignment of error is that the trial court erred in instructing the jury that "[f]requently, evidence relating to a claimed alibi will consist in part at least of the testimony of witnesses who are related to or are friends or associates of the accused and who may therefore be held to be in a greater or less degree interested. The liability of the human mind to make honest mistakes as to the dates or hours of the day or night when certain events occur, is a matter of common knowledge. Interested persons sometimes jump quickly to the time of an occurrence when such a time would be favorable to some desirable end or persons may at a later time be led to mistake when their memory is no longer certain in respect to the day or hour of the day. This is for you to determine whether or not the accused was at the scene of the crime and whether, of course, he did in fact commit a crime." The defendant properly does not claim that the language

of this portion of the charge in any way shifts to him the burden of proof to establish his alibi. Rather, his claim is that this portion of the charge is prejudicial in that it intimates that "alibi witnesses who testified for the defendant were mistaken or were stretching the facts."

On numerous occasions this court has stated that the trial court in a criminal case may, in its discretion, make fair comment on the evidence and particularly on the credibility of witnesses. See *State* v. *Tropiano,* 158 Conn. 412, 428, 262 A.2d 147; *State* v. *LaFountain,* 140 Conn. 613, 620, 103 A.2d 138; *State* v. *Pecciulis,* 84 Conn. 152, 158, 79 A. 75. In addition, we have also declared that an instruction on the credibility of alibi witnesses similar to that challenged by this assignment of error is both proper and fair when weighed in the light of the other paragraphs of the charge. *State* v. *Groos,* 110 Conn. 403, 410, 148 A. 350; *State* v. *Cianflone,* 98 Conn. 454, 466, 120 A. 347; 248 Rec. & Briefs, p. 926; 368 Rec. & Briefs, p. 2092. It is well recognized that the credibility of alibi witnesses is a subject as to which fair comment by the court to the jury is allowed. See *Sullivan* v. *Scafati,* 428 F.2d 1023 (1st Cir.), cert. denied, 400 U.S. 1001, 91 S. Ct. 478, 27 L. Ed. 2d 452; *Surridge* v. *State,* 239 Ark. 581, 393 S.W.2d 246; *Commonwealth* v. *Sullivan,* 354 Mass. 598, 239 N.E.2d 5, cert. denied, 393 U.S. 1056, 89 S. Ct. 697, 21 L. Ed. 2d 698; *State* v. *Griffin,* 336 S.W.2d 364 (Mo.); *Commonwealth* v. *Gates,* 392 Pa. 557, 141 A.2d 219; *Rogers* v. *State,* 455 S.W.2d 182 (Tenn. Crim. App.); *Bolin* v. *State,* 219 Tenn. 4, 405 S.W.2d 768. We find no error in this portion of the charge to the jury.

The defendant's next assignment of error concerns the failure of the court to charge the jury that

the defendant could, on the facts introduced, be found guilty of a lesser offense. The information charged the defendant with having a deadly or dangerous weapon in a motor vehicle in violation of § 29-38 of the General Statutes. The defendant claims that the court should also have charged that § 53-205 of the General Statutes which makes it a crime to carry a loaded shotgun in an automobile should have been called to the attention of the jury.

Recently we had occasion to consider precisely this problem in another case before this court. In *State* v. *Brown,* 163 Conn. 52, 61, 301 A.2d 547, we held that "[t]he test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense, in the manner described in the information or bill of particulars without having first committed the lesser. If it is possible, then the lesser violation is not an included crime. See *United States* v. *McCue,* 160 F. Sup. 595, 599 (D. Conn.). In other words, to require an instruction on a lesser included offense, the lesser offense must not require any element which is not needed to constitute the greater offense, in the manner alleged in the information or the bill of particulars. See *Waker* v. *United States,* 344 F.2d 795, 798 (1st Cir.). Limiting the scope of the doctrine in this way obviates any necessity for charging on every offense that the evidence suggests the defendant may have committed in the course of the crime charged—even though it has nothing to do with the crime charged." The defendant did not seek a bill of particulars which would have disclosed the item or items relied on by the state to prove the manner in which § 29-38 of the General Statutes had been violated. Absent a specific statement in either a bill of particulars or

the information itself that a shotgun had been used in the commission of the crime charged, the defendant was not entitled to a charge on the lesser offense of carrying a loaded shotgun in an automobile in violation of § 53-205 of the General Statutes.

The defendant also assigns as error the court's response to a question from the jury. After the jury had retired and commenced deliberations, it submitted the following question to the court: "What is the wick material in the bottle, State's Exhibit K?" Counsel and the court agreed that the proper answer to the question was to be found in the testimony of Officer Stankye. Counsel for the defendant objected to the reading of the entire testimony on the ground that portions of the dialogue were irrelevant to the question asked by the jury and prejudicial to the defendant's interests. Specifically, the defendant maintains that it was prejudicial to his cause to read the portion of Officer Stankye's testimony which mentions that the bottle was dropped from the car. "It is the policy of the law that every tribunal for the trial of civil or criminal causes should have open to it the best legitimate means of acquiring such knowledge of the law and facts as will enable it to decide the cases before it fairly and intelligently. No good reason occurs to us why a jury may not, at times during the trial or during the consideration of cases before them, be permitted either to have read to them parts of the official court stenographer's shorthand notes of the testimony, or have furnished to them typewritten transcripts of such notes." *State* v. *Rubaka,* 82 Conn. 59, 67, 72 A. 566. What portions of the record, if any, will be submitted to the jury for their consideration is a matter of sound judicial discretion. *Coy* v. *Milford,* 126 Conn. 484, 490, 12 A.2d 641; *State* v. *Rubaka,* supra, 68.

It is clear from a review of the text of Officer Stankye's statement[1] that his testimony which concerned the dropping of the bottle from the car was inextricably intertwined with the testimony which was directly related and responsive to the interrogatory of the jury. Had the trial judge attempted to expunge that portion of the testimony objected to by the defendant, the result would have been most artificial and could only have led the members of the jury to question their own personal recollections of the text of the testimony.

The defendant's final assignments of error concern his claim that the court erred in failing to suppress before the trial and in admitting into evidence at the trial articles seized from the trunk of the defendant's automobile. It is his claim that the officers who intercepted his automobile a short distance from the Dogwood Inn had no probable cause for arrest and thus, no right to search the trunk of the Cadillac automobile and seize the items introduced in evidence against him on the charge of having a dangerous or deadly weapon in a motor vehicle.

The finding on the pretrial motion to suppress, a finding not subject to correction, does not differ materially from the facts heretofore recited in our

---

[1] "By Mr. Walsh (Continued).

"Q. No, Officer Stankye, you had admitted into evidence this bottle and its contents, State's Exhibit K, which you testified that Mr. Cari dropped out of the passenger's side of his car. Could you tell us what that bottle is, including its contents?

"A. Yes. The bottle is a quart bottle of soda—a bottle of pop soda, Cott's concord grape, but it's filled with a volatile fuel of gasoline and when found, correction, when dropped out of the car and picked up by myself, it had a stuffing in the neck of the bottle which consisted of waste cloth, I guess you could call it—more what they call cheesecloth which is commonly known as cheesecloth and that also was soaked with the fluid that was contained inside the bottle."

discussion of the defendant's claim that the state had failed to prove his guilt beyond a reasonable doubt. It is unnecessary to repeat those facts in detail in considering the defendant's claim that the search and seizure made at the time of his arrest was constitutionally impermissible. The defendant was dressed in a manner which fitted the description given to the police by the bartender, Patchell, and the automobile he was operating was of the same type and color noted by Patchell before and after the crime of arson was committed. The arrest was made in the vicinity of the crime and the defendant acted most suspiciously while driving past the Dogwood Inn. These circumstances coupled with the action of the defendant in dropping the gasoline-filled bottle from the passenger door after he was stopped clearly furnished reasonable grounds for the arrest.

"A search cannot be sustained as incident to an arrest unless the arrest itself was valid. See *State v. Spellman,* 153 Conn. 65, 70, 212 A.2d 413. The validity of the arrest is to be determined by the application of § 6-49 of the General Statutes, which authorizes a police officer to arrest without a warrant 'any person who such officer has reasonable grounds to believe has committed or is committing a felony.' '[R]easonable grounds to believe' is to be equated with probable cause. *Henry* v. *United States,* 361 U.S. 98, 100, 102, 80 S. Ct. 168, 4 L. Ed. 2d 134; *State* v. *Wilson,* 153 Conn. 39, 41, 212 A.2d 75. 'In dealing with probable cause . . . , as the very name implies, we deal with probabilities. These are not technical, they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Brinegar* v. *United States,* 338 U.S. 160, 175, 69 S. Ct. 1302, 93

L. Ed. 1879; *State* v. *Wilson,* supra." *State* v. *Cobuzzi,* 161 Conn. 371, 375, 288 A.2d 439.

We find no error in the conclusions of the court that the officers had probable cause to arrest the defendant and probable cause to search his vehicle, which search was incident to his arrest. *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 414; *State* v. *Holmes,* 160 Conn. 140, 148, 274 A.2d 153.

There is no error.

In this opinion the other judges concurred.