STATE OF CONNECTICUT *v.* ROLAND HOFFLER

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued November 9, 1977—decision released March 21, 1978

*Andrew Chulick,* special public defender, for the appellant (defendant).

*Donald A. Browne,* state's attorney, for the appellee (state).

HOUSE, C. J.   On a trial to a jury, the defendant was found guilty of robbery in the first degree in violation of § 53a-134 (a) (2) of the General Statutes in that he stole money from Americo Sciarabba and while doing so was armed with a deadly weapon, a pistol.   He has taken this appeal from the judgment rendered on the verdict of guilty.

The statement of facts recited in the briefs of the defendant and the state and the findings on motions to suppress disclose the following circumstances: At about 10:30 a.m., on June 30, 1975, two black males armed with handguns and each carrying a leather jacket entered Rick's Liquor Store in Stamford. They held up the proprietor, Americo Sciarabba, and took about $70 from the cash register, $55 from Sciarabba's pocket, and about $17 from his wallet. The money from the cash register was put in a paper bag and the men also took a paper bag containing a quantity of pennies. They then put Sciarabba in the back room of the store, taped his wrists and ankles with two-inch adhesive tape and locked the door. A few minutes later, Sciarabba heard his name being called. He recognized the voice as that of a regular customer and responded to the call. The customer unlocked the door and let Sciarabba out of the back room. Immediately upon his release, Sciarabba telephoned the Stamford police and reported the holdup. He then noted that his own Bernadelli automatic pistol was missing from under the counter where it was kept and several items of his merchandise were also missing. The items missing included Sciarabba's only stock of the following: two bottles of White Horse scotch, one half gallon of Guckenheimer whiskey, and one bottle of Vat 69 scotch.

The customer who released Sciarabba from the back room arrived at the store just as the two robbers were completing their robbery. He later positively identified the defendant, Hoffler, as one of the two robbers. He also identified the other robber, Clyde Varner, who was tried jointly with the defendant.

Upon notification of the robbery, the Stamford police immediately issued over a "hot-line" radio network serving the surrounding communities details concerning the robbery. The broadcast included information of the belief that the robbers were two black males, one 5' 9" and the other approximately 6' 2" tall, dressed in dark clothing, who had fled in a red automobile which was possibly a Mustang. At about 10:40 a.m., two Greenwich police officers, James Hirsch and Charles Johnson, heard the police broadcast describing the robbery and immediately proceeded to a location on the Connecticut turnpike near the Greenwich toll booths. They stationed themselves to look out for two black suspects fitting the description given in the "hot-line" message. Within five minutes after they had stationed themselves on the turnpike, they observed two black males proceeding westerly in a red automobile. They observed that the passenger in the car kept continually looking at the officers and turning away. The officers followed the car very briefly and then motioned the driver to pull his vehicle to the side of the highway. After it was parked, the officers directed the operator to get out of the car and the defendant, Hoffler, who was the driver, got out of the car and walked to the front of the police car. The passenger, Varner, also got out of the car. Officer Hirsch then walked over and looked into the red automobile. From the outside, he observed two brown paper bags on the floor of the car on the passenger's side. One of the bags was ripped, disclosing bills and assorted change. At the same time, he observed on the automobile's rear seat a large brown paper bag with a quantity of liquor bottles in it and a black leather jacket with the butt handle of a handgun protruding from one

of the pockets. The officer then reached into the auto to touch the leather jacket and at that time observed another pistol in the other jacket pocket. Both guns were fully loaded. At that point, the officer removed his own service revolver and placed both Hoffler and Varner under arrest.

The Greenwich officers subsequently took into custody from the red automobile two leather jackets which were identified by Sciarabba as identical to those carried by the men who robbed him, the Bernadelli automatic pistol belonging to Sciarabba, two bottles of White Horse scotch, one bottle of Vat 69, one half gallon of Guckenheimer whiskey, one bottle of Bacardi rum and a bottle of Coca-Cola, all of which were identical with items missing from Rick's Liquor Store immediately subsequent to the robbery, two additional pistols identical to the two which the robbers had used in holding up Sciarabba, the ripped bag of money which also contained a torn and irregular portion of a ten-dollar bill identical to a similar portion of a bill which had been taken from Sciarabba's wallet, an empty adhesive tape roll, a quantity of loose and wrapped change and $87 in currency. Hoffler and Varner and the items taken from their car were turned over to the Stamford police who also secured an additional $55 from Hoffler's personal effects.

The record not only discloses a rather unusual trial but also reflects one which was interrupted by unusually frequent motions and objections. Although Hoffler and Varner were represented by public defenders, with a special one being appointed to defend Hoffler, both defendants claimed not only a lack of confidence in their assigned counsel but insisted that the presiding judge disqualify himself

for partiality and breach of the canons of judicial ethics. The court, on its own motion, permitted Hoffler to act as "co-counsel" in his own defense with the privilege of examining witnesses and making motions. The trial was marked by the following claims of the defendants: that they preferred to remain at the correctional center rather than participate in the trial proceedings; that they desired to exercise a peremptory challenge of the trial judge; that they objected to the substitution of the state's attorney for the assistant who became ill shortly after the trial began; a claim of fatigue due to insufficient food; a claim of a head injury sustained by Hoffler when his head bumped a van door while he was being brought to court; repeated threats not to come into the courtroom from the court detention area; claims that poor health and illness prevented their effective participation in the trial; claims that witnesses were disregarding and evading the court's sequestration order; and even a motion by Hoffler, personally, for a mistrial on the grounds that he had observed the prosecutor enter the judge's chambers during a recess. The trial eventually concluded with the defendants refusing to come to the courtroom from the courthouse cell block so that final arguments, the charge to the jury and the recording of the guilty verdicts were conducted in the absence of both Hoffler and Varner.

On appeal, the defendant filed eleven assignments of error, but has pursued only six issues in his brief, claiming that the court erred (1) in denying his pretrial motion to suppress, (2) in denying his motion for a rehearing of his motion to suppress at the time of trial, (3) in admitting for the consideration of the jury the items taken from the

defendant's car, (4) in denying his motion for a continuance to allow consolidation of pending actions, (5) in denying his motions for mistrial, and (6) in sustaining the state's objection to his motion to inspect the written statement of a police officer who testified during the pretrial hearing on the motion to suppress. Those assignments of error not briefed are considered abandoned. *State* v. *Crawford,* 172 Conn. 65, 66, 372 A.2d 154; *State* v. *Ruiz,* 171 Conn. 264, 265, 368 A.2d 222.

We will first consider the defendant's principal claim which relates to the admission into evidence of the very incriminating items consisting of guns and stolen property found in the car which were seized by the Greenwich police after the car the defendant was driving was stopped on the Connecticut Turnpike, the items were found and the defendant was arrested. In support of his claim, the defendant argues that the stopping was unlawful, that an unlawful arrest took place at the time he was directed to stop, and that the seizure of the items was illegal because it was done without a warrant and was not pursuant to a lawful arrest.

We find no illegality or impropriety in the action of the Greenwich police in stopping the car which the defendant was driving and in investigating the conduct of the occupants. The Greenwich police were acting in response to the Stamford police broadcast, the automobile and its occupants fit the descriptions given in connection with the robbery which had occurred only minutes before and the conduct of the passenger in the car when he saw the officers further aroused their suspicions. We have considered recently many challenges to the legality of the stopping or searching of an auto-

mobile and the warrantless arrest of persons who a police officer has reasonable grounds to believe have committed or were committing a felony. They are discussed in detail in *State* v. *Rice,* 172 Conn. 94, 374 A.2d 128, and in *State* v. *Acklin,* 171 Conn. 105, 368 A.2d 212. Our decisions in those cases fully support the court's denial of the motion to suppress in the present case and the admission into evidence of the seized items. It is unnecessary to repeat here the extended discussion in the *Acklin* case of the legal principles involved. See also *State* v. *Love,* 169 Conn. 596, 363 A.2d 1035; *State* v. *Watson,* 165 Conn. 577, 345 A.2d 532; *State* v. *Cari,* 163 Conn. 174, 303 A.2d 7. In *Adams* v. *Williams,* 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612, the United States Supreme Court reaffirmed the standards laid down in *Terry* v. *Ohio,* 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889: "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Effective crime prevention and detection underlie "the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry* v. *Ohio,* supra. "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrustion." Id., p. 21. The information furnished to the Greenwich police officers by the Stamford police, including the description of the automobile and the occupants,

coupled with the suspicious behavior of Hoffler's companion when he saw the police, certainly furnished "specific and articulable facts" which justified an investigation by the Greenwich officers. "In light of the similarity between the vehicle sought and the vehicle occupied by the defendants, the fact that the defendants were operating the vehicle in an orderly manner is of little, if any, significance." *State* v. *Acklin,* supra, 111. Nor, as the court noted in *Acklin* (p. 111), is it of any significance that in investigating the defendants the officers were acting upon information supplied by a police broadcast rather than firsthand information. "Police action may be justified by the collective knowledge of the law enforcement organization. *State* v. *Romano,* 165 Conn. 239, 246, 332 A.2d 64; *State* v. *Cobuzzi,* . . . [161 Conn. 371, 377, 288 A.2d 439, cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664]." *State* v. *Acklin,* supra. " 'The whole complex of swift modern communication in a large police department would be a futility if the authority of an individual officer was to be circumscribed by the scope of his first hand knowledge of facts concerning a crime or alleged crime.' *Williams* v. *United States,* 308 F.2d 326, 327 (D.C. Cir.)." *State* v. *Wilson,* 153 Conn. 39, 42, 212 A.2d 75.

It cannot be doubted that the Greenwich police officers had probable cause to arrest Hoffler. The crime for which he was arrested and with which he was charged was a felony. General Statutes § 53a-134 (a) (2). A police officer may lawfully arrest without previous complaint or warrant any person who he has reasonable grounds to believe has committed or is committing a felony. General Statutes § 6-49; *State* v. *Penland,* 174 Conn. 153, 155, 384 A.2d 356; *State* v. *Acklin,* supra, 112;

*State* v. *Middleton,* 170 Conn. 601, 603, 368 A.2d 66; *State* v. *Cobuzzi,* 161 Conn. 371, 376, 288 A.2d 439. As those cases indicate, probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed. The officer's observation that the car contained the torn bag of cash, the bottles of liquor, the leather jacket and the two pistols, coupled with the information he had received from the Stamford police, certainly gave him probable cause to arrest the defendant.

We also find no merit to the contention of the defendant that the seizure of the items taken from the car which he was driving, having been made without a search warrant, was illegal. "[A]utomobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office." *Chambers* v. *Maroney,* 399 U.S. 42, 50, 90 S. Ct. 1975, 26 L. Ed. 2d 419, rehearing denied, 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94; *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543. As the *Chambers* and *Carroll* cases indicate, among the facts which may justify a warrantless search of an automobile are instances where the search is made as an incident to a lawful arrest or where it is based upon probable cause to believe that the vehicle contains contraband or evidence pertaining to a crime. See also *State* v. *Tully,* 166 Conn. 126, 134, 348 A.2d 603; *State* v. *Cari,* 163 Conn. 174, 187, 303 A.2d 7. Not only was the search of the car amply justified by the officer's reasonable belief that it contained evidence pertaining to the crime of which he had been informed, but, as the trial court found, Officer

Hirsch was standing outside the car looking into it when he observed the torn paper bag containing a wad of bills and assorted change, five or six bottles of alcoholic beverages and a leather jacket with the butt of a handgun protruding. It was only then that he reached into the car and removed the leather jacket, finding another pistol in another pocket. It was at this point that he returned to the police car and placed Hoffler and Varner under arrest and thereafter returned to remove the torn bag and its cash contents. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris* v. *United States,* 390 U.S. 234, 236, 88 S. Ct. 992, 19 L. Ed. 2d 1067; *Ker* v. *California,* 374 U.S. 23, 42–43, 83 S. Ct. 1623, 10 L. Ed. 2d 726; *State* v. *Chetcuti,* 173 Conn. 165, 171, 377 A.2d 263; *State* v. *Krause,* 163 Conn. 76, 82–83, 301 A.2d 234.

We, therefore, conclude that there is no merit whatever to the claims of the defendant that the stopping of the car he was operating and his subsequent arrest were unlawful, or that the court erred in denying his motion to suppress the items taken from the car and in subsequently permitting their introduction as evidence in the trial.

The remaining assignments of error which the defendant has briefed do not require extended discussion. We do not consider those involving evidentiary rulings and rulings on motions where no claim of error was preserved for review on appeal by proper objection and exception. Practice Book §§ 226, 652; *State* v. *Siemon,* 172 Conn. 19, 20, 372 A.2d 140; *State* v. *Evans,* 165 Conn. 61, 65, 70, 327

A.2d 576; *State* v. *Hawkins,* 162 Conn. 514, 517, 294 A.2d 584, cert. denied, 409 U.S. 984, 93 S. Ct. 332, 34 L. Ed. 2d 249.

The court's ruling on the motion of the defendant for a thirty-day postponement of the trial in order to enable his counsel to negotiate a plea bargain with respect to this case and additional alleged offenses pending in Fairfield County, New Haven County and the judicial district of Waterbury was one entirely within the discretion of the trial court. *State* v. *Jeustiniano,* 172 Conn. 275, 285, 374 A.2d 209; *State* v. *Manning,* 162 Conn. 112, 121, 291 A.2d 750; *State* v. *DiBella,* 157 Conn. 330, 344, 254 A.2d 477. The court granted the motion to the extent of a six-day postponement. The motion was made six weeks after the defendant's motion to suppress had been heard and after the case had been reached for trial and a panel of prospective jurors had been assembled. Under the circumstances, we find no abuse of discretion in the court's ruling.

The court did not err in refusing to rehear the defendant's motion to suppress. His claims of illegal search and seizure of the items found in the automobile at the time of his arrest were fully heard at a pretrial hearing on his motion to suppress that evidence and that motion was denied. This court, in ruling on the same question in *State* v. *Mariano,* 152 Conn. 85, 91, 203 A.2d 305, cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962, observed: "Where a matter has already been put in issue, heard and ruled on pursuant to a motion to suppress, the court on the subsequent trial, although not conclusively bound by the prior ruling, may, if it is of the opinion that the issue

was correctly decided, properly treat it as the law of the case, in the absence of some new or overriding circumstance." In the present case, not only is there no claim of any new or overriding circumstance, but it appears that as the trial proceeded and the items taken from the car were offered in evidence, the defendant regularly objected to their admission as exhibits on the ground that they had been seized illegally and should have been suppressed, thus again presenting to the trial court the same claims for suppression which had been ruled on at the pretrial hearing. In commenting on similar circumstances, this court noted that under such a procedure "the ruling denying the motion to suppress was superseded by the evidential ruling made during the trial." *State* v. *Keeby,* 159 Conn. 201, 203, 268 A.2d 652, cert. denied, 400 U.S. 1010, 91 S. Ct. 569, 27 L. Ed. 2d 623. In any event, as we have already indicated, the items were lawfully taken from the car and were properly admitted in evidence.

It is unnecessary to discuss seriatim or in detail the defendant's several motions for a mistrial. The record discloses no abuse of discretion in the court's denial of the motions. Whether such a motion should be granted is a matter within the wide discretion of the trial court. *State* v. *Brown,* 169 Conn. 692, 703, 364 A.2d 186; *State* v. *Rose,* 168 Conn. 623, 635, 362 A.2d 813. The record does disclose overwhelming evidence of the guilt of the defendant and his coaccused and persistent efforts on their part to impede the progress of the trial to the extent of pressing unfounded charges of abuse on the part of the judge, the state's attorneys and their own assigned counsel. The trial was obviously a difficult one to conduct owing to the behavior of the defend-

ants, but it does appear that despite the assertions of the defendant to the contrary he did have a fair trial.

There is no error.

In this opinion the other judges concurred.