STATE OF CONNECTICUT *v.* ANNE M. BRADLEY
(AC 30149)

Gruendel, Harper and Beach, Js.

Submitted on briefs June 1—officially released September 28, 2010

*Kevin D. Lawlor*, state's attorney, *Lisa A. Riggione*, senior assistant state's attorney, and *Kevin S. Russo*, supervisory assistant state's attorney, filed a brief for the appellant (state).

*Opinion*

PER CURIAM. The state appeals from the judgment of the trial court setting aside the jury's verdict finding the defendant, Anne M. Bradley,[1] guilty of one count of breach of the peace in the second degree in violation of General Statutes § 53a-181 (6). The state claims that the evidence was sufficient to support the jury's verdict. We agree with the state. Accordingly, we reverse the

---

[1] The defendant did not file a timely appellate brief in either the direct appeal or on her cross appeal. Consequently, we have considered this matter on the basis of the state's brief and the record only.

judgment of the court and remand the case with direction to reinstate the jury verdict and to proceed to sentencing.

The record reveals the following facts, which the jury reasonably could have found, and the following procedural history. In 2006, the defendant applied for and was granted admission to the University of New Haven (university). At about this time, she began writing letters to Stephen Kaplan, the president of the university. The defendant testified that these letters initially explained her "aspirations" to Kaplan but that eventually she began discussing "stress factors" that she feared would interfere with her enrollment. For instance, in a letter dated June 2, 2006, the defendant discussed, at length, her frustrations related to a workers' compensation claim she made against an employer.

On June 16, 2006, a package that had been sent by the defendant via the United States Postal Service arrived at Kaplan's office. The package was opened by Kaplan's executive secretary, Lucy Wendland. Wendland, having previously opened correspondence sent to Kaplan from the defendant, recognized the return address as the defendant's and opened the package. Inside the package, Wendland found "a pile of junk," consisting of a cellular telephone and flattened beer cans and soda cans that were "glued together" in "one piece." The junk was held together with a "polymeric adhesive." In many cases, such adhesives can cause skin irritation. The package also contained a handwritten letter the defendant had written to Kaplan, the first paragraph of which read: "I bet nobody has ever given you literal junk before. And here's some junk, but I sanitized it with Clorox before spraying glaze on it." Upon opening the package and examining and touching its contents, Wendland experienced inconvenience, annoyance and alarm.

Wendland contacted the campus police, and Sergeant Ronald Whittaby of the university police department responded. Whittaby brought the package back to the campus police department where he removed the objects contained therein. As Whittaby did this, he noticed a chemical smell emanating from the items in the package and saw that the items were held together with "some type of gooey substance." Whittaby touched the substance with his fingers, which he then brought close to his nose to smell. After doing so, Whittaby felt "a burning sensation" in his mouth area, which became so painful that he feared he was going to get blisters. After dropping the package off at a forensics laboratory on campus for analysis, Whittaby went to a hospital where he was treated for irritant dermatitis and released the same day. Irritant dermatitis is a skin inflammation caused by a chemical irritant.

The state charged the defendant, who is not an attorney licensed to practice law in Connecticut and was self-represented throughout the jury trial and the proceedings before this court, with one count of reckless endangerment in the second degree in violation of General Statutes § 53a-64 and two counts of breach of the peace in the second degree in violation of § 53a-181 (6). The jury returned a verdict of not guilty on the count of reckless endangerment and not guilty of one count of breach of the peace.

Count three of the state's information charged, in relevant part: "[O]n or about the 16th day of June, 2006, at or around the area known as the University of New Haven, [the defendant] recklessly created a risk that caused inconvenience, annoyance or alarm to [Wendland], in that she created a public and hazardous condition by the act of introducing a chemical into an envelope which she was not licensed or privileged to do, in violation of [§] 53a-181 (6)." The jury returned a verdict of guilty on this count of breach of the peace.

Following the verdict, the defendant filed a motion for a judgment of acquittal, which was granted by the trial court. In its appeal from the judgment of the trial court, the state argues that the court improperly determined that there was insufficient evidence to support the jury's verdict. We agree with the state.

We begin by setting forth our standard of review. "[I]t is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . The Superior Court's power in this respect, as evidenced by Practice Book § 42-51 et seq., provides a defendant with the ability to request that the court render a judgment of acquittal despite a guilty verdict. The trial court, thus, may determine that the verdict is legally flawed, and either release the defendant or order a new trial." (Citations omitted; internal quotation marks omitted.) *State* v. *McCahill*, 261 Conn. 492, 517, 811 A.2d 667 (2002).

"Where, as here, the trial judge disagrees with the verdict of the jury, a vexing question often arises. . . . When this occurs, we review the action of the judge in setting the verdict aside rather than that of the jury in rendering it." (Citation omitted; internal quotation marks omitted.) *Campbell* v. *Gould*, 194 Conn. 35, 39, 478 A.2d 596 (1984). In the present case, the trial court determined that there was insufficient evidence to support the verdict. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to

accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Butler*, 296 Conn. 62, 76–77, 993 A.2d 970 (2010).

Section 53a-181 (6) provides: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . creates a public and hazardous or physically offensive condition by any act which such person is not licensed or privileged to do. For purposes of this section, 'public place' means any area that is used or held out for use

by the public whether owned or operated by public or private interests." The trial court concluded that the state failed to prove that the condition created by the defendant was either public or hazardous. We disagree. It is clear to us that, when the evidence is viewed in the light most favorable to sustaining the verdict of guilty, the jury reasonably could have concluded that the cumulative force of the evidence established that the defendant recklessly created a condition that was both public and hazardous. Accordingly, we conclude that the court abused its discretion by granting the motion for a judgment of acquittal.

With regard to the public nature of the condition created by the defendant, the state presented evidence that, although the package was addressed to the president of the university, it was opened by Wendland, his secretary. Moreover, by the defendant's own admission, she was aware that the president had an "open door policy" and encouraged students to visit his office. With regard to the hazardous nature of the condition, the state presented expert testimony that polymeric adhesives, like those used to glue together the items inside the package, can cause contact dermatitis "in many cases." Based on the aforementioned reasons, we conclude that there is a reasonable view of the evidence that supports the jury's verdict of guilty. Accordingly, the court abused its discretion by setting aside the verdict of the jury.

The judgment is reversed, and the case is remanded with direction to reinstate the jury's verdict and to proceed to sentencing.