******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MICHAEL MARK
(AC 38567)

Lavine, Beach and Keller, Js.*

*Argued October 27, 2016—officially released January 17, 2017*

(Appeal from Superior Court, judicial district of
Waterbury, Cremins, J.)

*Michele C. Lukban*, assistant state's attorney, with
whom, on the brief, were *Maureen Platt*, state's attor-

ney, and *Cynthia S. Serafini* and *Terence D. Mariani*, senior assistant state's attorneys, for the appellant (state).

*Alice Osedach*, assistant public defender, for the appellee (defendant).

*Opinion*

LAVINE J. The state appeals from the judgment of the trial court[1] setting aside the jury's verdict finding the defendant, Michael Mark, guilty of one count of tampering with evidence in violation of General Statutes (Rev. to 2010) § 53a-155 (a).[2] The state claims that the evidence was sufficient to support the jury's verdict of guilty. We agree with the state and reverse the judgment of the trial court.

A jury reasonably could have found the following facts. In the early morning of November 2, 2010, the victim, Arnaldo Gonzalez was walking to a polling station in the city of Waterbury, where he was scheduled to work as a Spanish interpreter. At approximately the same time and in the same vicinity, the defendant and his three friends, Manuel Vazquez (Tetan), Johnny Martinez, and Anthony Garcia, were driving to an "after hours" house where they could purchase alcohol after the liquor stores had closed. As they drove, the defendant and his friends saw the victim walking along the side of the road. The defendant stated to his friends that he was "about to rob that nigga." When the men arrived at their destination, the defendant and Martinez got out of the car and walked to where they had seen the victim.

When the defendant and Martinez returned, the defendant was carrying the victim's backpack. The defendant stated that he thought that he had killed the victim because he kept hitting him with a rock. The four men then drove to the home of Joan Ruiz, Tetan's sister. At the house, Garcia and Martinez went through the victim's backpack, finding needles, juice, a toy, and a Thermos. The defendant told Tetan that they had to return to the scene of the robbery to retrieve the rock that he had used to hit the victim because he did not want to leave any evidence of the murder weapon at the scene.

When the defendant and Tetan drove back to the scene, they picked up three of their friends, Vanessa Vazquez, Vanessa Olivencia, and Sonja Hernandez, who wanted to buy liquor from the "after hours" house. During the drive, the defendant and Tetan discussed how they needed to "go back to a spot" to "get something." When the defendant, Tetan, Vanessa Vazquez, and Hernandez arrived at the murder scene,[3] the defendant exited the car and told them that he "had to find the brick." No one in the car actually observed the defendant pick up the rock, but Vanessa Vazquez saw him bend down and then stand back up.

After the defendant exited the car, Tetan, Vanessa Vazquez, and Hernandez drove to the "after hours" house to purchase alcohol. There, they met Eliut Canales, Tetan's younger brother. Canales was "acting crazy" because he knew what had happened, and he

left with Vanessa Vazquez and Hernandez, leaving Tetan in the car. A couple of minutes after Canales, Vanessa Vazquez, and Hernandez left, Tetan observed the defendant through his rear-view mirror coming toward his car. When the defendant returned to the car, the defendant told Tetan that he had "got[ten] rid of the rock."

The victim's body was found on the sidewalk later that morning. When paramedics arrived at the scene, the victim was lying on the ground and bleeding from his head. Despite the fact that the victim suffered head trauma, the police were unable to locate the murder weapon at the scene.

The morning of the murder and throughout the next couple of days, the defendant admitted to a number of people—including Garcia, Tetan, Olivencia, Ruiz, and Canales—that he had murdered or thought that he had murdered the victim when he hit him with a rock. In addition, the defendant told Ruiz that he was afraid that "too many people knew about" the murder and was afraid "that somebody was going to talk."

The defendant was charged with murder, felony murder, two counts of robbery in the first degree, and one count each of conspiracy to commit robbery in the first degree and tampering with evidence. After the defendant's case-in-chief, but before the jury returned its verdict, the defendant made a motion for judgment of acquittal as to all counts. The court denied the motion with regard to counts one through five but reserved its decision as to the sixth count, which alleged tampering with evidence. On May 5, 2014, the jury found the defendant guilty on all counts. On August 29, 2014, during sentencing, the court granted the defendant's motion for a judgment of acquittal as to the sixth count. The court imposed a total effective sentence of forty-eight years in prison, twenty-five years of which were mandatory.

On September 2, 2014, the state, pursuant to General Statutes § 54-96, filed a motion for permission to appeal the court's granting of the defendant's motion for judgment of acquittal. On September 5, 2014, the defendant objected on the ground that granting the appeal would violate his constitutional right against double jeopardy. The same day, the court granted the state's motion for permission to appeal. Additional facts and procedural history will be set forth as necessary.

The state claims that the court abused its discretion when it granted the defendant's motion for judgment of acquittal after the jury found the defendant guilty of tampering with evidence. Specifically, the state argues that the jury reasonably could have found from the evidence adduced at trial that "the defendant successfully removed the rock that he had used to hit the victim in order to render [the] evidence unavailable" and that he did so because he "believed that it [was] probable

that an official proceeding would arise as a result of [the] police investigation." The defendant argues that the state failed to prove beyond a reasonable doubt that the defendant tampered with evidence because "none of the state's witnesses actually saw what the defendant did when he got out of the car and did not see [him] with a rock." The defendant also argues that while he probably believed that police would investigate the death of the victim, the defendant had no reason to believe that there would be an official proceeding brought against him because there was little evidence linking him to the crime.[4] We agree with the state.

The following additional facts are relevant to this claim. A substitute information, filed by the state, provided: "Count Six: And the above said senior assistant state's attorney further accuses and charges that the said Michael Mark did commit the crime of Tampering with Evidence . . . and charges that, on or about November 2, 2010, in the early morning hours, at or near 424 Baldwin Street, in the City of Waterbury, Connecticut, the said Michael Mark, believing that an official proceeding was about to be instituted, destroyed, concealed and removed evidence with the purpose to impair its verity or availability in such proceeding, to wit: he disposed of a weapon used, to wit: the rock."

During the defendant's argument in support of his motion for judgment of acquittal as to all counts, which took place after the defense rested but before the jury returned its verdict, he focused primarily on the charge of tampering with evidence. He argued that the state did not present sufficient evidence that the defendant believed that an official proceeding was about to be instituted against him. The defendant also argued that the state failed to prove that the defendant tampered with a piece of physical evidence. The state argued that the defendant's statements to Tetan, Hernandez, and Vanessa Vazquez about going back to the scene to retrieve the murder weapon implied that he understood that an official proceeding probably would arise from the murder and that an official proceeding could be brought against him because the rock linked him to the crime. The state also argued that it presented sufficient evidence that the defendant tampered with a physical piece of evidence when Tetan testified that the defendant told him that he had disposed of the rock. The court denied the motion with regard to counts one through five but reserved its decision as to the sixth count of tampering with evidence.

The jury returned a verdict of guilty on all counts. At sentencing, immediately before the court imposed its sentence, the prosecutor and defense counsel argued the defendant's pending motion for judgment of acquittal as to the tampering with evidence charge. The defendant argued that because none of the witnesses actually observed him pick up an object, it was pure speculation

that he tampered with any physical evidence at the scene. The state argued that there was sufficient evidence for the jury to find that the defendant returned to the scene and disposed of the rock because he was afraid of being caught by police. The court stated: "Based on the testimony that was presented, [the court] think[s] the testimony . . . would establish the elements of a conspiracy or an attempt to tamper with evidence, but [the court] [does not] find that there is adequate evidence [of] actual tampering." The court then granted the defendant's motion for judgment of acquittal with respect to the tampering with evidence charge.

On appeal, the state argues that it "provided ample evidence from which the jury concluded, beyond a reasonable doubt," that the defendant tampered with evidence. It argues that it presented sufficient evidence to show that "the defendant successfully destroyed, concealed and removed the rock he had used to kill the victim," including evidence that he expressly stated to witnesses that he wanted to return to the scene to dispose of the rock, his statement to Tetan that he successfully removed the rock, and the fact that police found no evidence of a murder weapon at the scene even though the victim suffered head trauma. In response to the defendant's argument that the state failed to prove that the defendant believed that an official proceeding would be instituted, the state argues that because "direct evidence of a defendant's state of mind is rarely available," it was reasonable for the jury to rely on circumstantial evidence to conclude that "the defendant believed that an official proceeding was probable . . . ." Such circumstantial evidence included the numerous witnesses who "connect[ed] him to the crime," his confessions to witnesses that he committed the murder with a rock, and his statement to Ruiz that he was afraid that too many people knew what happened and that someone was going to talk to the police.

"[T]he court has an inherent power to set verdicts aside." *State* v. *Avcollie*, 178 Conn. 450, 456, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980). There are three situations in which a court can grant a motion for judgment of acquittal. "First, the verdict may be overturned if the manifest injustice is so plain and palpable as to justify a suspicion that the verdict was produced by improper influences in passing on the credibility of witnesses and weighing conflicting testimony. . . . [Second], [t]he verdict may . . . be set aside if it is based on physically impossible conclusions, when testimony is in conflict with indisputable physical facts, the facts demonstrate that the testimony is either intentionally or unintentionally untrue, and [the facts] leave no real question of conflict of evidence for the jury concerning which reasonable minds could reasonably differ. . . . [Third and] [f]inally, a verdict may be set aside if *the jury could*

*not reasonably have concluded, from the facts estab-lished and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Sirimanochanh*, 26 Conn. App. 625, 639–40, 602 A.2d 1029, rev'd on other grounds, 224 Conn. 656, 620 A.2d 761(1993).

In the present case, the court determined that the state failed to prove, beyond a reasonable doubt, that the defendant tampered with evidence. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumula-tive force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's inno-cence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion estab-lished by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Bradley*, 124 Conn. App. 197, 201–202, 4 A.3d 347, cert. denied, 295 Conn. 917, 990 A.2d 867 (2010), cert. denied, 565 U.S. 1039, 132 S. Ct. 584, 181 L. Ed. 2d 429 (2011).

"The trial court should not set a verdict aside where there was some evidence upon which the jury could reasonably have based its verdict . . . ." (Internal quo-tation marks omitted.) *State* v. *Griffin*, 253 Conn. 195, 200, 749 A.2d 1192 (2000). A jury can rely on both cir-cumstantial and direct evidence when making its ver-dict. "There is no legal distinction between direct and circumstantial evidence so far as probative force is concerned." *State* v. *Cari*, 163 Conn. 174, 179, 303 A.2d 7 (1972). "Because direct evidence of the accused's

state of mind is rarely available . . . intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Otto*, 305 Conn. 51, 66, 43 A.3d 629 (2012).

General Statutes (Rev. to 2010) § 53a-155 (a) provides in relevant part: "A person is guilty of tampering with or fabricating physical evidence if, believing that an official proceeding is pending, or about to be instituted, he: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding . . . ." In other words, "[t]he state . . . must establish that the defendant (1) believed that an official proceeding was pending or about to be instituted, (2) discarded the evidence at issue, and (3) acted with the intent to prevent the use of the evidence at an official proceeding." *State* v. *Jordan*, 314 Conn. 354, 377, 102 A.3d 1 (2014). With regard to the belief element, the statute applies "no matter what stage the police have *actually* reached in their investigation, as long as the defendant believes that it is *probable* that an official proceeding will arise." (Emphasis in original.) Id., 379; see also *State* v. *Foreshaw*, 214 Conn. 540, 550–51, 572 A.2d 1006 (1990) (court rejecting defendant's argument that because defendant discarded gun prior to contact with law enforcement officers or judicial system, she could not have believed that official proceeding was about to be instituted). With respect to the intent element, if a defendant "act[ed] with the intent to keep evidence from the police, who play a crucial role in official proceedings, [it] may support an inference that a defendant intend[ed] to prevent the availability of that evidence at an official proceeding when the defendant believe[d] such a proceeding [was] probable." *State* v. *Jordan*, supra, 380.

We conclude that a reasonable view of the evidence supports the jury's verdict that the defendant is guilty of tampering with evidence. The state presented sufficient direct and circumstantial evidence to support the finding that the defendant went back to the scene of the murder to hide or destroy the rock he used to murder the victim because he was afraid that an official proceeding would be brought and that he did dispose of the rock.

First, the state provided sufficient circumstantial evidence that the defendant believed that an official proceeding would probably arise from the murder. Tetan testified that the defendant told him that he needed to return to the scene of the murder to retrieve the rock because he did not want to leave evidence of the murder weapon at the scene. A number of witnesses testified at trial that the defendant said that he had murdered or that he thought that he had murdered the victim with

a rock, which supports the inference that the defendant knew that there was a strong possibility that witnesses could testify in an official proceeding. See *State* v. *Guerrera*, 167 Conn. App. 74, 105, 142 A.3d 447 (jury reasonably could have inferred that defendant was aware that criminal prosecution was probable in part because of number of witnesses who saw defendant with victim), cert. granted on other grounds, 323 Conn. 922,      A.3d      (2016). Ruiz testified, moreover, that the defendant told her, after the defendant disposed of the rock, that he was afraid that too many people were aware that he committed the murder and that he was afraid that they would talk, presumably to law enforcement. Finally, the defendant knew that the victim's body was lying on the sidewalk in public view; surely the defendant was aware that an investigation and official proceeding probably would ensue when someone found the victim's body. See id. (defendant's firsthand knowledge of murder and assault, in part, supported reasonable inference that defendant was aware that criminal prosecution was probable). Thus, a jury certainly could conclude that the defendant believed that an official proceeding would be instituted.

Second, the state presented sufficient evidence for a jury reasonably to conclude that the defendant did in fact conceal or destroy the murder weapon. The defendant told Tetan that he needed to return to the scene to dispose of the rock. On their way, Vanessa Vazquez testified that she heard the defendant and Tetan discuss how they needed to "go back to the spot" to "get something." When they arrived at the scene, Hernandez testified that she heard the defendant say that he "had to find the brick." Vanessa Vazquez also testified that although she did not see him pick up the rock, she saw him bend over and then stand back up at the murder scene. Finally, Tetan testified that when the defendant returned to the car, he told Tetan that he had disposed of the rock. Thus, a jury reasonably could have concluded that the defendant destroyed or concealed the rock.

The defendant argues that the state did not prove this element because no one testified that they observed the defendant destroy or conceal the rock. Circumstantial evidence, however, can be given the same amount of probative weight as direct evidence; *State* v. *Cari*, supra, 163 Conn. 179; and in the present case, the state presented sufficient circumstantial and direct evidence for a jury rationally to infer that the defendant destroyed or concealed the rock.

Third, the state presented sufficient evidence that the defendant destroyed the rock with the intent to impede law enforcement's investigation in order to prevent an official proceeding from arising. Tetan testified that the defendant was "nervous" because he expressly told Tetan that he needed to go back to the scene to hide

the rock because he did not want it to be used as evidence. In fact, the defendant's efforts to dispose of the rock did impede law enforcement's investigation, as evidenced by the fact that police were unable to locate the murder weapon at the scene. Because the defendant believed that he could impede law enforcement's investigation, it can be inferred that he also wanted to impede an official investigation. *State* v. *Jordan*, supra, 314 Conn. 380. Thus, a jury reasonably could conclude that the state provided sufficient evidence to prove that the defendant had disposed of the rock in order to impede an official proceeding. Accordingly, the trial court improperly granted the defendant's motion for judgment of acquittal.

The judgment of acquittal with respect to count six of the information is reversed and the case is remanded with direction to reinstate the jury's verdict of guilty and to render judgment in accordance with the verdict and for resentencing according to law.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The state appealed, upon permission from the trial court, pursuant to General Statutes § 54-96.

[2] General Statutes § 53a-155 was amended by No. 15-211, § 9, of the 2015 Public Acts. Hereinafter, all references to § 53a-155 are to the 2010 revision of the statute.

[3] The group took Olivencia to Ruiz' house before returning to the murder scene.

[4] The defendant also argues that the court erred in granting the state permission to appeal because "the state cannot appeal from a judge's granting of a motion for judgment of acquittal based on insufficient evidence, prior to a jury verdict." We disagree. It is undisputed that the defendant made his motion for judgment of acquittal before the jury returned its verdict, and it is also undisputed that the court reserved its decision until after the jury returned its verdict pursuant to Practice Book § 42-42. When the defendant made his motion is not determinative. Rather, what is relevant is when the court issued its decision, and because the court ruled after the jury verdict, no double jeopardy issues are implicated. See *State* v. *Avcollie*, 178 Conn. 450, 453, 423 A.2d 118 (1979) ("[W]hen a case has been tried to a jury, the principle of double jeopardy does not prohibit an appeal by the prosecution providing that a retrial is not required in the event the prosecution is successful in its appeal. Thus, where a jury returns a verdict of guilty but the trial court thereafter renders a judgment of acquittal, an appeal is permitted and double jeopardy does not attach."), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980).