******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.*
## CHRISTOPHER BOLDEN
## (AC 46215)

Elgo, Moll and Prescott, Js.

### *Syllabus*

Pursuant to statute (§ 53a-155 (a)), a defendant is guilty of tampering with evidence if, "believing that a criminal investigation conducted by a law enforcement agency . . . is . . . about to be instituted, [the defendant] . . . conceals . . . [a] thing with purpose to impair its . . . availability in such criminal investigation . . . ."

Convicted, following a jury trial, of the crimes of evading responsibility in the operation of a motor vehicle and tampering with physical evidence, the defendant appealed to this court. The defendant's conviction stemmed from an incident during which the defendant struck and killed the victim with the SUV he was driving, fled the scene, and thereafter left the SUV in a driveway. *Held*:

1. The defendant could not prevail on his claim that the evidence was insufficient to support his conviction of tampering with evidence:

a. The evidence was sufficient to prove beyond a reasonable doubt that the defendant believed that a criminal investigation was about to be instituted when he fled the scene of the accident and abandoned the SUV he was driving in a driveway; the jury was permitted to consider circumstantial evidence presented by the state to make reasonable inferences regarding the defendant's state of mind, including evidence that the defendant saw the victim on the ground when he returned to the intersection before fleeing the scene, or that the defendant must have known from the significant damage to the SUV that the victim had been injured, and the jury was free to credit or discredit the defendant's statements in his recorded statement to the police.

b. There was sufficient evidence to prove beyond a reasonable doubt that the defendant had concealed the SUV; a rational juror could consider and credit the context for the defendant's act of concealment, including evidence that the defendant likely knew he had seriously injured a pedestrian, fled the scene, and needed to act quickly and temporarily abandon the vehicle, which had become disabled, and, in light of the defendant's exigent circumstances, a juror could conclude that he saw an opportunity to make the SUV less noticeable in a private driveway among several other vehicles.

2. This court did not reach the merits of the defendant's claim that the trial court's refusal to answer two questions submitted by the jury during its deliberations as to whether moving evidence equated to tampering or concealing evidence resulted in an unconstitutional enlargement of the charged crimes, as that claim was deemed waived pursuant to *State*

v. *Kitchens* (299 Conn. 447): although the trial court did not inform the parties of the answer it intended to provide to the jury's questions, it invited counsel, outside the presence of the jury, to raise any issues before the answer was given, both counsel stated that they had nothing further to discuss, and counsel failed to object after the court responded to the jury's questions; accordingly, this court could not say that the defendant was deprived of a fair trial when the record indicated that the defense was provided a meaningful opportunity to propose an answer to the jury's questions and to object to the trial court's response to those questions, and, therefore, the defendant waived the right to challenge that response on appeal.

Argued May 15—officially released August 27, 2024

*Procedural History*

Substitute information charging the defendant with the crimes of evading responsibility in the operation of a motor vehicle, misconduct with a motor vehicle, and tampering with physical evidence, brought to the Superior Court in the judicial district of Waterbury, geographical area number four, and transferred to the judicial district of Waterbury, where the case was tried to the jury before *Kwak, J.*; verdict and judgment of guilty of evading responsibility in the operation of a motor vehicle and tampering with physical evidence, from which the defendant appealed to this court. *Affirmed.*

*Alice Osedach Powers*, assigned counsel, for the appellant (defendant).

*Alexander O. Kosakowski*, certified legal intern, with whom were *Scott A. Warden*, certified legal intern, and, on the brief, *Ronald G. Weller*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ELGO, J. The defendant, Christopher Bolden, appeals from the judgment of conviction, rendered following a jury trial, of evading responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (a) and tampering with physical evidence in violation of General Statutes § 53a-155 (a). On appeal, the defendant

claims that (1) with regard to the tampering charge, the evidence was insufficient to prove beyond a reasonable doubt that the defendant believed that a criminal investigation was about to be instituted and that he had concealed a thing with the purpose to impair its availability in such investigation, and (2) the court's refusal to answer the jury's questions during its deliberations resulted in an improper enlargement of the charged crimes. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, as reasonably could have been found by the jury, are relevant to the resolution of this appeal. At approximately 8:40 p.m. on May 1, 2020, the defendant, an unlicensed driver, was driving his girlfriend's black BMW sport utility vehicle (SUV) on Baldwin Street in Waterbury. The roadway was dry, and the intersection of Baldwin Street and Scovill Street was well lit from the streetlights and exterior lights from Saint Mary's Hospital. A witness driving a vehicle behind the defendant could clearly see the victim, Shaneice Copeland, walking along the sidewalk near the intersection. As the defendant and the witness both approached the intersection, the light was green. At that time, the victim stepped off the sidewalk and into the crosswalk. The defendant did not slow down or brake as he approached the intersection, and he struck the victim with the SUV. The victim rolled over the hood of the SUV before landing on the street.

After striking the victim, the defendant drove several hundred feet before coming to a stop on Baldwin Street. After approximately twenty seconds, the defendant conducted a U-turn and returned to the intersection where he had struck the victim. The defendant paused at the intersection, made eye contact with a witness, and then immediately fled the scene. Witnesses who called 911 immediately after the accident described the victim as a "body" on the ground and noted that she

was "[laying] on the ground . . . like she is dead." The victim died later that evening as a result of blunt impact injuries to the head, neck, torso, and extremities.

After leaving the scene of the accident, the defendant drove the SUV to Meriden Road in Waterbury, approximately six or seven miles from where the accident occurred. The SUV began to overheat and smoke. When the SUV was no longer drivable, the defendant put it in neutral and allowed it to roll backwards down the natural incline of the street and into a driveway on Meriden Road that had at least seven other vehicles parked in it. The defendant knocked on the door of the residence and told the homeowner that he was having car trouble. The homeowner called a cab for the defendant and, when it arrived, at the defendant's request, the homeowner and the cab driver assisted the defendant in pushing the SUV far enough into the driveway so that its front bumper would no longer protrude into the street. The defendant then left in the cab, and the homeowner understood that the defendant would return the next day for the SUV. The cab driver took the defendant to his girlfriend's place of employment, then drove the couple to a hotel, where they stayed for the night.

From the description provided by a witness at the scene of the accident, police investigators knew that they were looking for a black SUV with front end damage consistent with striking a pedestrian. At approximately 10:50 a.m. the next morning, on May 2, 2022, a patrol officer found the SUV parked in the driveway on Meriden Road. The officer noted that the SUV was facing the street, and, as a result, the front end damage was clearly visible to anyone driving in either direction. A crime scene technician was dispatched to photograph and collect evidence from the SUV, while police officers spoke with the homeowner at that address.

On that same morning, the defendant and his girlfriend were picked up from the hotel by a friend. Between approximately 11 a.m. and noon, the defendant, along with his friend and his girlfriend, drove past the driveway on Meriden Road, where the SUV was parked. The girlfriend testified that it was their intention "to go get the car, to look at the car, to go see what happened to the car" but, upon seeing the police activity at the residence on Meriden Road, they drove past it without stopping and eventually returned to the home of the defendant's girlfriend. Once at her home, the girlfriend called the police to report that her vehicle had been stolen but later admitted to making the false report. Soon after, the police arrived and took the defendant and his girlfriend to the police station for questioning. The defendant at that time confessed to striking the victim with the SUV, leaving the scene without speaking to anyone, parking and leaving the SUV in the driveway on Meriden Road, and stated that he was aware that his girlfriend had falsely reported that the SUV had been stolen.

The defendant thereafter was arrested and charged with the following crimes: in count one, evading responsibility in the operation of a motor vehicle in violation of § 14-224 (a),[1] in count two, misconduct with a motor vehicle in violation of General Statutes § 53a-57 (a),[2] and, in count three, tampering with physical evidence in violation of § 53a-155 (a).[3] Specifically, in count three,

---

[1] General Statutes § 14-224 (a) provides in relevant part: "Each operator of a motor vehicle who is knowingly involved in an accident which results in the death of any other person shall at once stop and render such assistance as may be needed and shall give such operator's name, address and operator's license number and registration number to any officer or witness to the death of any person  . . . ."

[2] General Statutes § 53a-57 (a) provides: "A person is guilty of misconduct with a motor vehicle when, with criminal negligence in the operation of a motor vehicle, he causes the death of another person."

[3] General Statutes § 53a-155 (a) provides in relevant part: "A person is guilty of tampering with or fabricating physical evidence if, believing that a criminal investigation conducted by a law enforcement agency or an official

the state charged the defendant with tampering with physical evidence "in that, on or about May 1, 2020, at or about [9 p.m.], at or near 727 Meriden Road, in the [c]ity of Waterbury, Connecticut, the [defendant], believing that a criminal investigation conducted by a law enforcement agency was about to be instituted, concealed a thing with purpose to impair its availability in such criminal investigation."

After the presentation of evidence at trial, the court instructed the jury on the elements of each of the charged crimes, noting that "[t]he state is required to prove each element and each count beyond a reasonable doubt." During deliberations, the jury asked for clarification regarding two of the elements in count three, specifically, whether moving evidence equated with tampering or concealing evidence. The court responded that it was up to the jury as a group to determine that answer.

The jury found the defendant guilty on count one, evading responsibility in the operation of a motor vehicle in violation of § 14-224 (a), and on count three, tampering with physical evidence in violation of § 53a-155 (a). The jury found the defendant not guilty on count two, misconduct with a motor vehicle in violation of § 53a-57 (a). The court rendered judgment in accordance with the jury's verdict and sentenced the defendant to a total effective term of fifteen years of incarceration. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant's first claim is that the evidence was insufficient to support his conviction of tampering with

proceeding is pending, or about to be instituted, such person . . . [a]lters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such criminal investigation or official proceeding . . . ."

physical evidence because the state failed to prove beyond a reasonable doubt that he (1) believed a criminal investigation was about to be instituted when he fled the scene of the accident and subsequently abandoned the SUV in a driveway, and (2) concealed the SUV.[4] We disagree.

"To determine whether the evidence was sufficient to establish [an] essential element of [a crime], we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom, the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . In doing so, we are mindful that the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier [of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

---

[4] In the statement of issues and in the primary heading in his principal appellate brief, the defendant claims, inter alia, that the evidence was insufficient to prove that he "intended to conceal a vehicle with the intent to impair its availability in [a] criminal proceeding." In the subheading and body of his brief, however, the defendant does not argue the "intent to conceal" the SUV or "intent to impair its availability." Rather, the defendant argues that "the evidence was insufficient to prove beyond a reasonable doubt that [he] concealed the vehicle." Because the substance of the defendant's argument involves the alleged concealment of the SUV, that is the claim we address on appeal. See, e.g., *Taylor* v. *Mucci*, 288 Conn. 379, 383 n.4, 952 A.2d 776 (2008) ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.)).

"[W]e do not draw a distinction between direct and circumstantial evidence so far as probative force is concerned . . . . Indeed, [c]ircumstantial evidence . . . may be more certain, satisfying and persuasive than direct evidence. . . . It is not one fact . . . but the cumulative impact of a multitude of facts [that] establishes guilt in a case involving substantial circumstantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Honsch*,    Conn.    ,    , A.3d    (2024).

Section 53a-155 (a) provides in relevant part that a defendant is guilty of tampering with evidence "if, believing that a criminal investigation conducted by a law enforcement agency . . . is . . . about to be instituted, [the defendant] . . . conceals . . . [a] thing with purpose to impair its . . . availability in such criminal investigation . . . ."[5] Consequently, the court instructed the jury that, in order to find the defendant guilty of tampering with evidence, it must find the following elements beyond a reasonable doubt: "(1) the defendant believed that a criminal investigation conducted by a law enforcement agency was pending or about to be instituted, (2) the defendant tampered with physical evidence, and (3) the defendant concealed any item with the purpose of impairing its availability in such proceeding."

"We . . . note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt.

---

[5] Although § 53a-155 (a) allows a defendant to be convicted if he "conceals *or removes* any . . . thing with purpose to impair its verity or availability"; (emphasis added); here, the state only charged the defendant with concealment, and not removal, of a "thing . . . ." For that reason, concealment was the element used in the jury instructions, as well as the element that is considered on appeal.

. . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt.'' (Internal quotation marks omitted.) *State* v. *Taupier*, 330 Conn. 149, 187, 193 A.3d 1 (2018), cert. denied,    U.S.    , 139 S. Ct. 1188, 203 L. Ed. 2d 202 (2019). When a penal statute includes a requirement such as a defendant's belief or intent, the jury is often tasked with considering circumstantial evidence in order to determine the defendant's state of mind at the time of the crime. ''[T]he state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually [proven] by circumstantial evidence. . . . For example, intent may be proven by conduct before, during and after [a crime]. Such conduct yields facts and inferences that demonstrate a pattern of behavior and attitude . . . by the defendant that is probative of the defendant's mental state.'' (Citation omitted; internal quotation marks omitted.) *State* v. *Bonilla*, 317 Conn. 758, 766, 120 A.3d 481 (2015). Here, the jury was permitted to rely on the circumstantial evidence presented by the state, such as the defendant's actions and his pattern of behavior, to make reasonable and logical inferences regarding his state of mind.

A

The defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that he believed that a criminal investigation was about to begin when he fled the scene of the accident and abandoned

the SUV he has driving in a driveway. Specifically, the defendant points to his recorded statement to the police in which he stated that he never observed the victim on the ground after striking her and, instead, believed that the victim was uninjured because he mistakenly thought she was an unidentified person walking along the sidewalk after the accident. The defendant argues that, "as [he] left the scene, he did not believe that an official proceeding or investigation against him was probable because he believed that . . . the person had not been injured." With regard to parking the SUV in the driveway, the defendant similarly argues that he moved the disabled SUV into the driveway because Meriden Road is a busy road with very little shoulder, and not because he believed that a criminal investigation was about to be instituted. We are not persuaded.

The jury was permitted to consider circumstantial evidence presented by the state, together with the defendant's actions and his pattern of behavior, to determine his state of mind. "In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Campbell*, 328 Conn. 444, 504, 108 A.3d 882 (2018). The jury was free to credit or disregard the defendant's statements in his recorded statement to the police. Similarly, the jury was permitted to draw reasonable inferences from the evidence in the record, including that the defendant saw the victim on the ground when he returned to—and paused at—the intersection before fleeing the scene, or that the defendant must have known from the significant damage to the SUV that the victim had been injured. The state produced sufficient

evidence upon which the jury could find that the defendant believed that a criminal investigation was about to be instituted when he fled the scene and ultimately abandoned the SUV. Accordingly, the defendant's claim fails.

B

The defendant next claims that the state's evidence was insufficient to prove beyond a reasonable doubt that he concealed the SUV. The defendant provides various definitions of the term "conceal" and argues that this term "cannot be interpreted broadly, but must be construed narrowly . . . ." On the basis of a narrow reading of the definitions he provided, the defendant argues that, "[b]ecause there was no evidence that [he] attempted to or did conceal the vehicle, the [jury's] verdict was based on speculation and not reasonable inferences drawn from the evidence." We disagree.

"When construing a statute . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . In determining whether the statutory language is plain and unambiguous, words and phrases [must] be construed according to the commonly approved usage of the language . . . . General Statutes § 1-1 (a)." (Citation omitted; internal quotation marks omitted.) *Redding Life Care, LLC* v. *Redding*, 331 Conn. 711, 718, 207 A.3d 493 (2019). The word "conceal" is not defined in § 53a-155 (a) (1) or elsewhere in the Penal Code. Although "[w]e ordinarily look to the dictionary definition of a word to ascertain its commonly approved usage"; (internal quotation marks omitted) *Redding Life Care, LLC* v. *Redding*, supra,

718; in a jury trial, "[i]t is not necessary to define words [for the jury] which are commonly used and which are defined in our standard dictionaries. [T]he definition of words in our standard dictionaries is taken as a matter of common knowledge which the jury is supposed to possess." (Internal quotation marks omitted.) *State* v. *Lewtan*, 5 Conn. App. 79, 85, 497 A.2d 60 (1985). "[J]urors . . . are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life . . . ." (Internal quotation marks omitted.) *State* v. *King*, 289 Conn. 496, 522, 958 A.2d 731 (2008). Thus, it is in the purview of a jury to use and apply the ordinary meaning—as the jury understands it—of a word that is commonly used and is not statutorily defined. It is with this understanding that courts often decline to provide a jury with a dictionary definition of commonly understood terms. See, e.g., *State* v. *Lewis*, 303 Conn. 760, 782–83, 36 A.3d 670 (2012) (presuming jury understood and applied common usage of disputed terms); *State* v. *Maresca*, 173 Conn. 450, 460, 377 A.2d 1330 (1977) (court did not err in failing to define terms that may be understood in their ordinary meaning); *State* v. *Lewtan*, supra, 85 (courts may "refuse to define words which are 'used and might be understood in their ordinary meanings' ").

Here, it is presumed that the jury would know the commonly understood meaning of the word "conceal." Merriam-Webster's Collegiate Dictionary includes in its definition of the word "conceal" "to prevent disclosure or recognition of [something] . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2014) p. 257. Using their "common knowledge . . . and experience of the affairs of life"; (internal quotation marks omitted) *State* v. *King*, supra, 289 Conn. 522; the jurors were expected to determine whether the defendant's placement of the

SUV in the driveway was an act of concealment in keeping with a commonly understood definition of the word "conceal."

Although the defendant argues that, if it was his intention, he could have more effectively concealed the SUV by using a tarp, parking it in a garage, or facing it away from the street, that is not the relevant inquiry. Rather, when considering a sufficiency of the evidence claim, we view the cumulative evidence in the light most favorable to sustaining the jury's verdict and then determine whether any rational juror could find that the defendant concealed the SUV.

There is sufficient evidence in the record to sustain the jury's verdict. First, a rational juror could consider and credit the context for the act of concealment, which, here, includes evidence that the defendant likely knew he had seriously injured a pedestrian, fled the scene, and needed to quickly and temporarily abandon the SUV. Next, in light of the exigencies of the defendant's circumstances, a juror could conclude that the defendant saw an opportunity to make the SUV less noticeable in a private driveway with a significant number of other vehicles. Using the commonly understood definition of "concealment," a rational juror reasonably could conclude that parking a disabled vehicle in a private driveway amongst several other vehicles, even if the subject vehicle is in plain sight, could prevent the vehicle from being located. For this reason, the defendant's argument that the evidence was insufficient to prove that he committed an act of concealment fails.

## II

The defendant's second claim is that the court's refusal to answer the jury's questions as to whether moving evidence equated to tampering or concealing evidence unconstitutionally enlarged the charged offense. We do not reach the merits of this claim

because it is deemed waived pursuant to *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), and because the defendant failed to properly raise a claim of plain error.[6]

The following additional facts are relevant to this claim. During deliberations, the court received a note containing two questions from the jury concerning count three, the tampering charge. Specifically, the jury asked: "Related to count three: In element [two], does moving evidence equate to tampering with evidence? In element [three], does moving evidence equate to concealing evidence?" Before calling the jury back into the courtroom, the court advised the parties that it would excuse the jury for the remainder of the day and would respond to its questions the following morning. The court read the questions aloud to the parties and their respective counsel, excused the jury, and then asked counsel if they wanted to read the note for themselves. Both counsel declined. The court then asked: "Is there anything before we adjourn for today?" Both parties' counsel responded, "No, Your Honor."

The next morning, the court again invited the parties to provide feedback by asking: "Is there anything we

---

[6] "[T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 812, 155 A.3d 209 (2017). In his principal appellate brief, the defendant makes several conclusory assertions that "the trial court's inadequate response to the jurors' questions constituted plain error," but provides no analysis to support his claim. Although the defendant's reply brief contains a citation to case law regarding the plain error doctrine, it similarly is devoid of analysis, and, instead, merely asserts that the plain error doctrine applies to his claim. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Taylor* v. *Mucci*, supra, 288 Conn. 383 n.4.

need to discuss before bringing [in] the [jurors] and [giving] them an answer to the questions that they asked yesterday?" Both counsel responded: "No, Your Honor." The jurors were brought into the courtroom, and the court read back their questions regarding whether moving evidence equated to concealing or tampering with evidence, and stated: "[The court] cannot give you that answer. That is for you to determine, whether that equates to those things. So, you'll have to make that decision as a group." The court asked the jury to resume its deliberations, then affirmatively asked counsel if there was "[a]nything before we recess," to which both counsel responded: "No, Your Honor." Defense counsel expressed no objection to the court's course of action in responding to the jury's note.

Whether the court's response to the jury's questions resulted in an enlargement of the charged offenses constitutes a legal question over which we exercise plenary review. See, e.g., *State* v. *David N.J.*, 301 Conn. 122, 158, 19 A.3d 646 (2011) ("enlargement claims . . . require us to exercise plenary review").

On appeal, the defendant concedes that his enlargement claim was not preserved before the trial court and thus requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond

a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 239–40.

It is undisputed that the first two prongs of *Golding* are satisfied in the present case. The state argues, however, that the third prong is not met because the defendant waived his claim pursuant to *State* v. *Kitchens*, supra, 299 Conn. 447. We agree with the state.

"A defendant in a criminal prosecution may waive one or more of his or her fundamental rights. . . . [I]n the usual *Golding* situation, the defendant raises a claim on appeal [that], while not preserved at trial, at least was not waived at trial. . . . [A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial. . . .

"The mechanism by which a right may be waived . . . varies according to the right at stake. . . . For certain fundamental rights, the defendant must personally make an informed waiver. . . . For other rights, however, waiver may be effected by action of counsel. . . . [Our Supreme Court] has stated that among the rights that may be waived by the action of counsel in a criminal proceeding is the right of a defendant to proper jury instructions." (Citations omitted; internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 467.

The waiver by the defendant in this case is comparable to the waiver that was effected in *State* v. *Grasso*, 189 Conn. App. 186, 207 A.3d 33, cert. denied, 331 Conn. 928, 207 A.3d 519 (2019). During jury deliberations in *Grasso*, the jury requested to rehear the closing arguments of counsel. Id., 222. Outside of the jury's presence, the court read the request to the parties' counsel,

told them it would deny the request, and indicated that it would, instead, instruct the jury on direct and circumstantial evidence. Id., 223. Counsel for both parties affirmatively stated they did not have an issue with the court's proposed response. Id. The jury returned to the courtroom, the court informed the jury that its request to rehear the closing arguments was denied, and then instructed the jury regarding direct and circumstantial evidence. Id., 223–24. Thereafter, the jury returned to its deliberations, and neither party raised the issue again until the defendant's subsequent appeal from the judgment of conviction. Id., 224. On appeal, this court determined that the defendant had waived the opportunity to challenge the propriety of the court's response to the jury's request because, at trial, defense "counsel affirmatively replied that there were no objections to the court's response and, even after the court addressed the jury in the manner it had proposed, neither the prosecutor nor defense counsel stated any reservations or objections to the court's response." Id., 226.

Here, although the court did not inform the parties of the answer it intended to provide to the jury's questions, it twice invited counsel—outside the presence of the jury—to raise any issues they wanted to discuss prior to the answer being given. Both counsel affirmatively stated that they had nothing to discuss. Then, similar to *Grasso*, neither counsel raised a concern or objection after the court responded to the jury's questions, even though here, they were affirmatively invited to do so. As a result, we conclude that the defendant cannot satisfy the third prong of *Golding*. We cannot say that the defendant was deprived of a fair trial when the record indicates that the defense was provided a meaningful opportunity to either propose an answer to the jury's questions or object to the court's response to those questions. Accordingly, because the defense

acquiesced to the court's response to the jury's questions, the defendant waived, pursuant to *Kitchens*, the right to challenge that response on appeal. The defendant's claim fails because it is waived and, therefore, does not satisfy *Golding*'s third prong. As a result, we do not reach the merits of the defendant's enlargement claim.

The judgment is affirmed.

In this opinion the other judges concurred.