******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.*
# CHRISTOPHER BOLDEN
## (SC 21063)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

### *Syllabus*

The defendant appealed, on the granting of certification, from the judgment of the Appellate Court, which had affirmed his conviction of evasion of responsibility in the operation of a motor vehicle and tampering with physical evidence. The defendant's conviction stemmed from an incident in which he struck and killed a pedestrian with the sport utility vehicle (SUV) he was driving, fled the scene, and, when the SUV broke down shortly thereafter, left the SUV in the driveway of a private residence. On appeal, the defendant claimed that the Appellate Court had incorrectly concluded that there was sufficient evidence to sustain his conviction of tampering with physical evidence. *Held*:

The Appellate Court incorrectly concluded that there was sufficient evidence to sustain the defendant's conviction of tampering with physical evidence, as the facts did not establish that the defendant's conduct constituted concealment under the applicable criminal statute (§ 53a-155 (a)).

Whatever the defendant's intention or plan may have been when he fled the scene and left the SUV backed into a private driveway in front of other vehicles that were parked there, the defendant did not conceal any part of SUV, as an SUV sitting uncovered at the end of a driveway with its damaged front end facing a public roadway is not concealed in any sense of that term.

Accordingly, this court reversed in part the Appellate Court's judgment, the trial court was directed on remand to render a judgment of acquittal on the charge of tampering with physical evidence, and this court left it to the discretion of the trial court whether to resentence the defendant on remand.

Argued November 5—officially released December 16, 2025

### *Procedural History*

Substitute information charging the defendant with the crimes of evasion of responsibility in the operation of a motor vehicle, misconduct with a motor vehicle, and tampering with physical evidence, brought to the Superior Court in the judicial district of Waterbury and tried to the jury before *Kwak, J.*; verdict and judgment of guilty of evasion of responsibility in the operation of

a motor vehicle and tampering with physical evidence, from which the defendant appealed to the Appellate Court, *Elgo*, *Moll* and *Prescott*, *Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Reversed in part*; *judgment directed.*

*Alice Osedach Powers*, assigned counsel, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, *Elena Palermo*, senior assistant state's attorney, and *Scott A. Warden* and *Alexander O. Kosakowski*, certified legal interns, for the appellee (state).

*Opinion*

ALEXANDER, J. The defendant, Christopher Bolden, struck a pedestrian with a sport utility vehicle (SUV), causing her to suffer fatal injuries, and then fled from the scene. After the SUV broke down on a road several miles away, the defendant enlisted the assistance of two strangers and pushed it into a private residential driveway, leaving the vehicle's damaged front end completely visible from the busy street. In this certified appeal, the defendant claims that the Appellate Court incorrectly concluded that his actions furnished sufficient evidence of concealment to sustain his conviction of tampering with physical evidence in violation of General Statutes § 53a-155 (a). We conclude that the facts of this case do not establish that the defendant's actions constituted concealment of the SUV for purposes of establishing criminal liability under the tampering statute. Accordingly, we reverse in part the judgment of the Appellate Court.

The jury reasonably could have found the following relevant facts. On May 1, 2020, the defendant, who did not have a driver's license, was operating the SUV, a

BMW X3 owned by his girlfriend, Breyanne Talbot, on Baldwin Street in Waterbury. At the four way intersection of Baldwin, Scovill and Mill Streets near Saint Mary's Hospital, the defendant struck the victim, Shaneice Copeland, who had stepped off the sidewalk to cross Baldwin Street in a crosswalk, causing her to suffer fatal, blunt impact injuries to the head, neck, torso, and extremities. The defendant did not slow down or stop the SUV after striking the victim but instead drove away from the scene onto the Baldwin Street highway overpass, where he stopped briefly, performed a U-turn, drove past the crash site, made brief eye contact with a witness, and then continued to flee.

The SUV broke down several miles from the scene on Meriden Road in Waterbury, partially blocking the street and the driveway of the house at 727 Meriden Road. The defendant knocked on the door of the house, told the homeowner that he was having car trouble, and asked for help moving the car and to call him a taxi. The homeowner agreed to help and called a taxi for the defendant. When the taxi arrived approximately twenty minutes later, its driver assisted the defendant and the homeowner in pushing the SUV a few feet from the street into the inclined driveway. The SUV was parked in the driveway with its front end facing Meriden Road. Several other vehicles were already parked in the driveway; the SUV was left in front of those vehicles, closest to the street. The defendant did not tell the homeowner that he had struck a pedestrian or ask him to hide the SUV or to call the police. The homeowner believed that the defendant would return the following day to pick up the SUV.

The defendant then left in the taxi and went to pick up Talbot at her place of employment, located on the Berlin Turnpike in Berlin. While on the way to Berlin, the defendant told the taxi driver that "his girlfriend [would] want to kill him because the car [broke] down,

and she is not going to understand that." They then picked up Talbot and drove to a nearby hotel, where the defendant and Talbot spent the night. The defendant told Talbot that he had picked her up in the taxi because he had an accident with the SUV, which was still in Waterbury, "but everything was okay." The defendant's friend drove him and Talbot from the hotel back to Talbot's home in Waterbury the next morning.

The Waterbury police officers assigned to investigate the crash conducted a search for the SUV. On May 2, 2020, one of the officers found the vehicle parked where it had been left by the defendant the night before, in the driveway of the house at 727 Meriden Road. The SUV was backed into the driveway at the front of two lines of multiple vehicles. It was blocking the sidewalk, with its damaged front end facing the street.[1] The SUV and the damage could be seen from either direction of travel on the roadway. The SUV was not in a garage, under a tarp, in trees or bushes, behind other cars in the driveway, behind the house, or otherwise obscured.

While returning to Waterbury from the hotel in Berlin, the defendant and Talbot planned to stop at 727 Meriden Road to check on the SUV. Because they saw the police in front of the house, they did not stop to inspect the SUV but instead drove away. After they arrived at Talbot's house, Talbot called the police and falsely reported the SUV stolen; by that point, she knew that the defendant had struck a pedestrian with it.

Following an investigation, the police arrested the defendant, and he ultimately confessed to his involvement in the incident. The state charged the defendant with evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224

---

[1] The visible damage to the SUV included the grille and fog lamps, and dents on the hood and front bumper. A piece of the victim's jacket was later found in the grille area.

(a), misconduct with a motor vehicle in violation of General Statutes § 53a-57 (a), and tampering with physical evidence in violation of § 53a-155 (a). The case was tried to a jury, which found the defendant guilty of evasion of responsibility and tampering with physical evidence.[2] The trial court rendered judgment in accordance with the jury's verdict and sentenced the defendant to a total effective term of fifteen years of imprisonment.[3]

The defendant appealed from the judgment of conviction to the Appellate Court. See *State* v. *Bolden*, 227 Conn. App. 636, 637, 323 A.3d 1130 (2024). With respect to the tampering conviction at issue in this appeal, the defendant claimed that "the evidence was insufficient to prove beyond a reasonable doubt that the defendant believed that a criminal investigation was about to be instituted and that he had concealed a thing with the purpose to impair its availability in such investigation . . . ." Id., 638. The Appellate Court disagreed with the defendant, holding with respect to concealment that "a rational juror could consider and credit the context for the act of concealment, which, here, includes evidence that the defendant likely knew he had seriously injured a pedestrian, fled the scene, and needed to quickly and temporarily abandon the SUV. . . . [I]n light of the exigencies of the defendant's circumstances, a juror could conclude that the defendant saw an opportunity to make the SUV less noticeable in a private driveway with a significant number of other vehicles." Id., 648.

---

[2] After the state rested its case, the trial court denied the defendant's motion for a judgment of acquittal on all counts. The defendant renewed the motion as to the tampering charge on the ground of insufficient evidence after the jury returned its guilty verdict on that count. The trial court also denied that motion.

[3] The trial court sentenced the defendant to fifteen years of imprisonment on the evasion of responsibility conviction and five years of imprisonment on the tampering conviction, to run concurrently, for a total effective sentence of fifteen years of imprisonment.

Accordingly, the Appellate Court affirmed the judgment of conviction.[4] Id., 653. This appeal followed.[5]

On appeal, the defendant claims that the Appellate Court incorrectly concluded that there was sufficient evidence to sustain his tampering with physical evidence conviction under § 53a-155 (a). In addition to arguing that there was insufficient evidence of his belief that there was a pending or imminent investigation by a law enforcement agency, or an intent to impair the availability of the SUV for use in that investigation, the defendant contends that there was insufficient evidence of concealment, which is the act element of the offense. Relying on case law from other states, the defendant argues that the unobscured location of the parked SUV demonstrates as a matter of law that it was not "concealed" within the ordinary meaning of that term. See, e.g., *In re Juvenile 2003-187*, 151 N.H. 14, 16–17, 846 A.2d 1207 (2004); *Stahmann* v. *State*, 602 S.W.3d 573, 580–81 (Tex. Crim. App. 2020). We agree with the defendant and conclude that there was insufficient evidence

[4] During its deliberations, the jury submitted a written note to the trial court asking whether "moving evidence equate[s] to concealing evidence" for purposes of § 53a-155 (a). After consulting with counsel, the trial court responded to the jury's question by stating: "We cannot give you an answer. That is for you to determine, whether that equates to those things. So, you'll have to make that decision as a group." In the Appellate Court, the defendant claimed that this ruling "unconstitutionally enlarged the charged offense." *State* v. *Bolden*, supra, 227 Conn. App. 648. The Appellate Court did not reach the merits of this claim, deeming it "waived pursuant to *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), and because the defendant failed to properly raise a claim of plain error." *State* v. *Bolden*, supra, 648–49. This claim is not before us in this certified appeal.

[5] We granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly determine that the evidence was sufficient to prove beyond a reasonable doubt that the defendant had concealed his motor vehicle for the purpose of impairing its availability in connection with a criminal investigation, as required to support his conviction of tampering with physical evidence under . . . § 53a-155 (a)?" *State* v. *Bolden*, 350 Conn. 917, 325 A.3d 215 (2024).

of the act of concealment to sustain the tampering conviction in this case.[6]

It is well established that, "[i]n reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether [on] the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of

---

[6] Before addressing the concealment element of § 53a-155 (a), the Appellate Court rejected the defendant's argument that "the evidence was insufficient to prove beyond a reasonable doubt that he believed that a criminal investigation was about to begin when he fled the scene of the accident and abandoned the SUV he [was] driving in a driveway." *State* v. *Bolden*, supra, 227 Conn. App. 644–45. The Appellate Court held that circumstantial evidence of the defendant's belief as to the institution of a criminal investigation was established by evidence that he "saw the victim on the ground when he returned to—and paused at—the intersection before fleeing the scene, or that [he] must have known from the significant damage to the SUV that the victim had been injured." Id., 645. Given our conclusion with respect to the concealment element, we need not address the defendant's arguments as to his mental state.

evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts [that] establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Dixon*, 353 Conn. 382, 417–18, 342 A.3d 161 (2025).

We begin with the relevant statutory language. Section 53a-155 (a) provides in relevant part: "A person is guilty of tampering with . . . physical evidence if, believing that a criminal investigation conducted by a law enforcement agency or an official proceeding is pending, or about to be instituted, such person: (1) *Alters*, *destroys*, *conceals or removes* any record, document or thing with purpose to impair its verity or availability in such criminal investigation or official proceeding . . . ."[7] (Emphasis added.) Prior tampering

---

[7] In articulating the elements of tampering with physical evidence in *State* v. *Jordan*, 314 Conn. 354, 102 A.3d 1 (2014), this court noted that the state "must establish that the defendant (1) believed that an official proceeding was pending or about to be instituted, (2) *discarded the evidence at issue*, and (3) acted with the intent to prevent the use of the evidence at an official proceeding." (Emphasis added.) Id., 377. As was discussed at oral argument before this court, this is an incomplete articulation of the act element of

cases from this court and the Appellate Court largely concern the mental state elements of the offense, namely, the extent to which a defendant "believ[ed] that a criminal investigation conducted by a law enforcement agency or an official proceeding is pending, or about to be instituted," or had the "purpose to impair [the] verity or availability [of the evidence] in such criminal investigation or official proceeding . . . ." General Statutes § 53a-155 (a); see, e.g., *State* v. *Jordan*, 314 Conn. 354, 388–89, 102 A.3d 1 (2014); *State* v. *Foreshaw*, 214 Conn. 540, 550–51, 572 A.2d 1006 (1990); *State* v. *Knox*, 201 Conn. App. 457, 471–74, 242 A.3d 1039 (2020), cert. denied, 336 Conn. 905, 244 A.3d 146 (2021), and cert. denied, 336 Conn. 906, 243 A.3d 1180 (2021); *State* v. *Mark*, 170 Conn. App. 241, 252–54, 154 A.3d 564, cert. denied, 324 Conn. 927, 155 A.3d 1269 (2017); see also *State* v. *Stephenson*, 207 Conn. App. 154, 171–74, 263 A.3d 101 (2021) (tampering conviction arising from defendant's breaking into prosecutor's office in courthouse and damaging files), cert. denied, 342 Conn. 912, 272 A.3d 198 (2022). In contrast, the present case turns on the act element of § 53a-155 (a), and specifically what it means to conceal an object for purposes of the tampering offense as charged in this case.

The statute does not define the term "conceal." We, therefore, "may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use," rendering it "appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Brown*, 345 Conn. 354, 381, 285 A.3d 367 (2022); see General Statutes § 1-1 (a). As the parties agree, the term "conceal" is commonly understood to mean "to prevent disclosure

§ 53a-155 (a), which plainly encompasses actions beyond discarding the evidence at issue.

or recognition of" or "to place out of sight . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2014) p. 257; see also Dictionary.com, available at https//www.dictionary.com/browse/conceal (last visited December 9, 2025) (defining "conceal" in relevant part as "to hide; withdraw or remove from observation; cover or keep from sight"). Because Connecticut's tampering statute is based on the Model Penal Code; see, e.g., *State* v. *Jordan*, supra, 314 Conn. 379; see also 2 A.L.I., Model Penal Code and Commentaries (1980) § 241.7, p. 175; we also find instructive case law from other state courts applying similar statutes containing the same language.

These out-of-state cases involving language derived from the Model Penal Code establish several general principles with respect to proof of concealment. First, as the Kentucky Supreme Court explained with respect to the application of the tampering statute to shoplifters, the concealment must exceed that which is "directly incident to the underlying crime." *Commonwealth* v. *Henderson*, 85 S.W.3d 618, 620 (Ky. 2002). Second, the tampering statute's language does not contemplate attempts standing alone—the object itself must be actually concealed to establish a violation. See, e.g., *Harris* v. *State*, 991 A.2d 1135, 1138 (Del. 2010); *State* v. *Lasu*, 278 Neb. 180, 185–86, 768 N.W.2d 447 (2009); *In re Juvenile 2003-187*, supra, 151 N.H. 16–17; *Stahmann* v. *State*, supra, 602 S.W.3d 580–81. Nevertheless, as the state argues, an object need not be completely hidden to be concealed, and an object might well be hidden, despite being otherwise visible. See, e.g., *Plew* v. *Limited Brands, Inc.*, Docket No. 08 Civ. 3741 (LTS) (MHD), 2012 WL 379933, *3–4 (S.D.N.Y. February 6, 2012) (concluding that object that is "camouflaged" and "visible to anyone who looks hard enough" may also be sufficiently "concealed from sight" to be "hidden" (internal quotation marks omitted)); *J & J Fish on Center Street, Inc.*

v. *Crum & Forster Specialty Ins. Co.*, Docket No. 20-cv-1644-bhl, 2022 WL 4131920, *4 (E.D. Wis. September 12, 2022) ("That something can be seen when extraordinary efforts are employed does not mean that it is not hidden. In other words, something can be 'visible' and also 'hidden.' "). Finally, the act of concealment may be established by circumstantial evidence. See, e.g., *State* v. *Daniels*, 397 Mont. 204, 220, 448 P.3d 511 (2019); see also *State* v. *Mark*, supra, 170 Conn. App. 253 (there was sufficient evidence of concealment when defendant told people he was returning to crime scene to destroy rock that was murder weapon, was witnessed bending over and picking something up there, and told other witnesses that he had disposed of it).

In applying these principles, we find instructive *Stahmann* v. *State*, supra, 602 S.W.3d 573, a recent case in which the Texas Court of Criminal Appeals concluded that there was insufficient evidence of concealment. Id., 581. In *Stahmann*, two witnesses observed the defendant, after being involved in a motor vehicle accident, throwing "a bottle of promethazine, a controlled substance, over a nearby wire fence before law enforcement arrived," with the "bottle land[ing] two to three feet past the fence in plain view." Id., 575–76. The state argued in *Stahmann* that " 'conceal' means to remove from sight or notice, even if only temporarily, and that the [tampering with physical evidence] statute refers to concealing evidence from law enforcement," such that it was irrelevant that the witnesses to the accident "never lost sight of the pill bottle, that they directed [a police officer] to the bottle, that [the police officer] could see it 'very clearly,' or that the bottle was easily retrieved . . . ." Id., 580. Acknowledging that a "rational jury could have reasonably inferred that [the defendant] *intended* to conceal the pill bottle when he threw it over the wire fence," the court nevertheless emphasized that "intent and concealment are two dis-

tinct elements of the offense . . . .” (Emphasis added.) Id., 581. The facts, the court explained, “show[ed] that [the defendant] *failed to conceal* it as he intended because the bottle landed short of the bush in plain view on top of some grass.” (Emphasis added.) Id. The court also observed that whether an object is hidden in plain sight is fact sensitive, with that determination informed by factors such as lighting and location.[8] Id., 580; see id., 580–81 (distinguishing case from others in which it was more difficult for police officers to find discarded objects, including bag of narcotics and crack cocaine pipe).

Similarly, in *State* v. *Hawkins*, 406 S.W.3d 121 (Tenn. 2013), the Tennessee Supreme Court held that there was insufficient evidence of concealment when a defendant, “shortly after firing the fatal shot . . . tossed his shotgun over a fence . . . [that] was short and easy to see through. Nothing actually covered the weapon. Had the area been [well lit], the gun would have been easily seen, especially against the snow that lightly covered the ground. The police . . . found the shotgun rather quickly, and the shotgun itself as well as the DNA evidence found on the shotgun were successfully produced as evidence against [the defendant] at his trial.” Id., 137. The court rejected the state’s argument that the defendant had “succeeded in concealing evidence because, by tossing the gun into a somewhat out-of-the-way place, [the defendant] was able to tell the police that he had no weapon and, therefore, was allowed to

---

[8] Quoting *Gaitan* v. *State*, 393 S.W.3d 400, 402 (Tex. App. 2012, pet. ref’d), the state argues that the fact that the defendant’s “attempt at concealment ‘was ultimately unsuccessful matters little.’ ” *Gaitan* is distinguishable from the present case because it involved a much smaller object, namely, a stolen handgun, which was discarded when the police had arrived in response to a reported domestic disturbance. See *Gaitan* v. *State*, supra, 401. Moreover, *Gaitan*, which is a decision of an intermediate appellate court in Texas, is inconsistent with the more nuanced analysis in the Texas Court of Criminal Appeals’ subsequent decision in *Stahmann*.

leave the scene of the crime." Id. The court emphasized that, "[b]y leaving the shotgun out in the open near the crime scene, [the defendant] did not materially impede the investigation or cause the gun to lose any of its evidentiary value." Id. He also "did not place [the shotgun] out of sight. If he prevent[ed] disclosure or recognition of the gun, he did so only for a brief period of time." (Internal quotation marks omitted.) Id. The court stated that the defendant "placed the evidence where it was quite likely to be discovered, even if he hoped that it might be less associated with him. . . . All [he] attempted to conceal was the fact of his possession of the evidence—not the evidence itself."[9] (Internal quotation marks omitted.) Id.; see also id., 138 (citing cases in jurisdictions that treat abandonment as defense to evidence tampering when defendant has discarded evidence in plain view without damaging it or otherwise rendering its recovery impossible or substantially more difficult).

We agree with the Appellate Court that the jurors were bound to apply the common meaning of the term "conceal" "[u]sing their common knowledge . . . and experience of the affairs of life"; (internal quotation marks omitted) *State* v. *Bolden*, supra, 227 Conn. App. 647; and that "a rational juror could consider and credit the context for the act of concealment, which, here, includes evidence that the defendant likely knew [that]

---

[9] Other cases are similarly illustrative of the distinction between a defendant's act of concealing his association with evidence, as opposed to concealing the evidence itself. See, e.g., *People* v. *Comage*, 241 Ill. 2d 139, 150–51, 946 N.E.2d 313 (2011) (it was not act of concealment to throw crack cocaine pipe over fence in plain view of police officers); *Commonwealth* v. *James*, 586 S.W.3d 717, 729–30 (Ky. 2019) (it was not act of concealment to drop glass pipe containing methamphetamine residue on sidewalk near police officer); *State* v. *Lasu*, supra, 278 Neb. 181, 185–86 (it was not act of concealment to throw bag of marijuana into bin of snack foods in store); *Commonwealth* v. *Delgado*, 544 Pa. 591, 594, 679 A.2d 223 (1996) (it was not act of concealment to throw bag of cocaine onto roof of nearby garage while being pursued by police).

he had seriously injured a pedestrian, fled the scene, and needed to quickly and temporarily abandon the SUV." Id., 648. We also agree with the Appellate Court that, "in light of the exigencies of the defendant's circumstances, a juror could conclude that the defendant saw an opportunity to make the SUV less noticeable in a private driveway with a significant number of other vehicles." Id., 648. Nevertheless, whatever the defendant's intention or plan may have been when he fled the scene, his acts did not conceal any part of the SUV when he left it backed into a driveway in front of the other vehicles there. The SUV was completely visible from the street and likely more visible to passers by because it partially blocked the sidewalk. Moreover, the damaged front end was facing the street. Although it may well be possible for an object to be hidden in plain sight; see, e.g., *Thornton* v. *State*, 425 S.W.3d 289, 305 and n.81 (Tex. Crim. App. 2014); an SUV, sitting uncovered at the end of a driveway with its damaged front end facing a public roadway, is not concealed in any sense of the term.[10]

Because the jury could not reasonably have found the act of concealment on these facts, its verdict finding the defendant guilty of tampering with physical evidence was not supported by sufficient evidence. Accordingly, the defendant is entitled to a judgment of acquittal on that charge.[11]

---

[10] To the extent that the state relies on the defendant's "best efforts" to establish attempt under General Statutes § 53a-49, or other potential theories of criminal liability under the tampering statute, such as removal from the scene; see General Statutes § 53a-155 (a); it did not charge and try this case in that manner, and limited the grounds for the tampering charge to concealment, with the defendant responding accordingly. The theory of the case doctrine, therefore, precludes us from considering these other theories to uphold the defendant's conviction. See, e.g., *State* v. *King*, 321 Conn. 135, 149–50, 136 A.3d 1210 (2016).

[11] Because reversal of the tampering conviction does not affect the total effective sentence imposed in this case, we leave any resentencing to the discretion of the trial court in accordance with the aggregate package theory of sentencing. See, e.g., *State* v. *Johnson*, 316 Conn. 34, 42–43, 111 A.3d 447 (2015); cf. *State* v. *Michael A.*, 297 Conn. 808, 814–16, 1 A.3d 46 (2010).

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to reverse the trial court's judgment only with respect to the conviction of tampering with physical evidence and to remand the case to the trial court with direction to render a judgment of acquittal on the charge of tampering with physical evidence and for any resentencing at the trial court's discretion; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.